**Heather E. Harriman, OSB No. 992368**
hharriman@rose-law.com
**ROSE LAW FIRM, P.C.**
5200 Meadows Road, Suite 150
Lake Oswego, OR 97035
Telephone: (503) 278-7618
Facsimile: (503) 296-5827
    Of Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(PORTLAND DIVISION)

| | |
|---|---|
| JASON MEYER, an individual, and ARGIL DX LLC f/k/a ZAP TECHOLOGY SOLUTIONS LLC, a Nevada limited liability company,<br><br>    Plaintiffs,<br><br>    v.<br><br>ANKUR MITTAL, an individual; ARGILDX CONSULTNG PVT. LTD. f/k/a ACCUNITY SOFTWARE PVT. LTD., an Indian private company; and ADX CONSULTING INC., a Texas corporation,<br><br>    Defendants,<br><br>    and<br><br>ARGIL DX a/k/a ARGILDX, an Oregon entity,<br><br>    Nominal Defendant. | Case No.: _____<br><br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT, DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jason Meyer ("Meyer") and Zap Technology Solutions, LLC (n/k/a Argil DX

LLC) bring their Complaint against Defendants Ankur Mittal, Accunity Software Pvt. Ltd. (n/k/a

ArgilDX Consulting Pvt. Ltd.), and ADX Consulting Inc.; as well as Nominal Defendant Argil

DX a/k/a Argil DX, and allege as follows:

## I.    <u>INTRODUCTION</u>

1.

Defendant ArgilDX Consulting Pvt. Ltd. (f/k/a Accunity Software Pvt. Ltd.)

("Accunity")[1] and its founder/owner Defendant Ankur Mittal ("Mittal") are actively and thus far

successfully destroying the business relationship with Argil DX LLC (f/k/a Zap Technology

Solutions, LLC) ("Zap")[2] and its founder/owner, Plaintiff Jason Meyer.

2.

In short, Defendants are attempting to steal for themselves what Zap and Accunity have

put together as a joint brand, labor force and business that Zap and Accunity began creating in

2016 and under which the parties have jointly operated and held themselves out to the world as

Argil DX (defined below) for the last four to five years.

3.

Accunity and Mittal (as well as their co-conspirators) are accomplishing this destruction,

theft and concomitant economic damage by breaching obligations to make payments to Zap;

pursuing and entering into business relationships with others in violation of their duties to Zap

and Meyer; forming entities (such as Defendant ADX Consulting) to compete with the business

relationship between Zap and Accunity and the customers of the joint business relationship

known as Argil DX (defined below); operating business(es) using trademarks and brands to

---

[1] Defendant Mittal's entity and Plaintiff Meyer's entity are referred to in this Complaint by their former names, so as to avoid the inevitable confusion if multiple parties are referred to as some form of "Argil."

[2] *See* FN 1.

which Zap has superior rights; misstating financial data required to be accurately reported to Zap; attempting to register the trademark "Argil DX" as their own mark.

4.

Meyer and Zap have been forced to go to court to enforce their rights, and in this Complaint bring claims for trademark infringement, intentional interference with economic relations, breach of contract (express or implied), breach of fiduciary duties, and accounting, as alleged more fully below.  Plaintiffs contend that each of the Defendants, and certain other known and unknown persons and entities are co-conspirators, and are therefore liable for all of the actions and omissions of each other.

5.

Plaintiffs ask this Court to enjoin Defendants from pursuing the Infringing Application (defined below), to declare that the parties formed the general partnership DX or created a joint venture in Argil DX, to award actual damages in an amount believed to be at least $1,000,000; award statutory, treble and punitive damages, as appropriate; and award Plaintiffs their attorneys' fees, costs and expenses.  Plaintiffs also seek imposition of a constructive trust, and an accounting between the parties.

## II.    THE PARTIES AND NON-PARTY CONSPIRATORS

### A.    Plaintiff Parties

6.

Plaintiff Zap is a limited liability company organized and existing under the laws of the State of Nevada.

7.

Zap's principal place of business is located in Hillsboro, Oregon.

8.

Zap was incorporated in 2010 as Zap Technology Solutions, LLC.

9.

Zap changed its name to Argil DX LLC in 2018.

10.

Plaintiff Jason Meyer is the founder and sole owner of Zap.

B.      **Defendant Parties**

11.

Defendant Accunity is an entity organized and existing under the laws of India.

12.

Accunity was incorporated in 2014 as Accunity Software Pvt. Ltd.

13.

Accunity changed its name to ArgilDX Consulting Pvt. Ltd. 2018.

14.

Defendant Ankur Mittal is a founder and primary shareholder of Accunity.

15.

Defendant Ankur Mittal is a citizen and resident of India.

16.

Defendant ADX Consulting Inc. ("ADX Consulting") is a corporation organized and existing under the laws of the State of Texas.

17.

Defendant Accunity is a shareholder of Defendant ADX Consulting.

18.

Defendant Mittal is a Director and shareholder of Defendant ADX Consulting.

C.      **Nominal Defendant Party**

19.

Nominal Defendant Argil DX a/k/a ArgilDX ("Argil DX") is or may be deemed to be a business combination in which some or all of the other parties to this action are participants, with an existence separate and apart from the other parties to this action.

20.

No monetary relief is sought against Argil DX, but Argil DX is named as a Nominal Defendant because the relief sought in this Complaint will, if granted, require actions to be taken by Argil DX.

D.      **Non-Party Co-Conspirators**

21.

As further pled below, the individuals and entities set out in this section have acted for, on behalf of, or in concert with the Defendants, such that their actions also form the basis of Defendants' liability in this action.

22.

Further, some or all of these individuals and entities may, after investigation and discovery, be added as party defendants to this action.

23.

Shilpi Mittal is the wife of Defendant Mittal.

24.

Shilpi Mittal is an employee of Defendant Accunity and at one time (and perhaps still) a

Senior Vice President of Defendant Accunity.

25.

Shilpi Mittal is a shareholder of Defendant ADX Consulting.

26.

Nilanjan Mukherjee is a shareholder of ADX Consulting and an employee of Accunity.

27.

Pankaj Bansal is a shareholder of ADX Consulting, a shareholder of Accunity and an employee of Accunity.

28.

CXMOJO Consulting Private Limited, f/k/a Argil DX Services Private Limited, is an Indian company whose role is currently undefined but has used the "Argil DX" name.

29.

As described below, Emertail Technologies Pvt. Ltd. ("Emertail") is an Indian company involved in Accunity/Mittal's scheme to take customers from Argil DX's business.

III.    **JURISDICTION AND VENUE**

**Personal Jurisdiction**

30.

Accunity and its owner Mittal had a continuous business presence in Oregon that is directly related to the allegations of this Complaint.

31.

The Component Companies (defined below) operate as Argil DX, of which Mittal is a

co-founder, and uses its website https://www.argildx.com/ to publicize its presence in the United

States generally, and Oregon specifically:



**US Headquarters**

**Argil DX LLC**
3773 Howard Hughes Parkway
Suite 500 South
Las Vegas, NV 89169

**Beaverton Office**
4900 SW Griffith Dr
Suite 205
Beaverton, OR 97005

+1 (888) 554-0502

32.

Argil DX touts its relationships with various U.S. companies such as Coca-Cola, Intel,

Lowe's, Petco, Autodesk, and TD Ameritrade.  (argildx.com/services/, accessed April 9, 2021).

33.

Argil DX also boasts of its business relationships with the State of Oregon, and Oregon's

own Nike.

34.

As alleged in detail throughout this Complaint, and pursuant to ORCP 4 A(4), this Court

has personal jurisdiction over Defendants Accunity and Mittal because they engaged in

substantial and not isolated activities within this state, whether such activities are wholly

interstate, intrastate, or otherwise.

35.

As alleged in detail throughout this Complaint, and pursuant to ORCP 4 D, this Court has

personal jurisdiction over Defendants Accunity and Mittal because injury is claimed in this state caused by their activities out of this state while they were conducting service activities within this state.

36.

As alleged in detail throughout this Complaint, and pursuant to ORCP 4 E(1), this Court has personal jurisdiction over Defendants Accunity and Mittal because this action arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff.

37.

As alleged in detail throughout this Complaint, and pursuant to ORCP 4 E(2), this Court has personal jurisdiction over Defendants Accunity and Mittal because this action arises out of services actually performed for the plaintiff by the defendant within this state or services actually performed for the defendant by the plaintiff within this state, if such performance within this state was authorized or ratified by the defendant.

38.

As alleged in detail throughout this Complaint, and pursuant to ORCP 4 E(2), this Court has personal jurisdiction over Defendants Accunity and Mittal because they have continuous and systematic general business contacts with Oregon and have purposefully directed their activities at residents of Oregon, and this litigation results from alleged injuries that arise out of or relate to those activities.

39.

ADX Consulting is a co-conspirator of Mittal and Accunity.

40.

Defendant Mittal, co-founder of Argil DX, operates ADX Consulting with full knowledge that ADX Consulting's business is in direct competition with Argil DX and for the purpose of competing with Argil DX.

41.

ADX Consulting used Zap's Oregon address in the Infringing Application (defined below).

42.

Because ADX Consulting is a co-conspirator of Mittal and Accunity, even if ADX Consulting's own acts or omissions do not give rise to personal jurisdiction, the actions of ADX Consulting's co-conspirators support personal jurisdiction.

**<u>Subject Matter Jurisdiction</u>**

43.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332, diversity of citizenship.

44.

No Plaintiff is the citizen of the same state as any Defendant.

45.

The amount in controversy exceeds $75,000.00.

46.

This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§1331 and 1338.  This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## Venue

47.

Venue is proper under 28 U.S.C. § 1391.

48.

Under 28 U.S.C. § 1391(b)(2), a substantial part of the events or omissions giving rise to this action occurred in the State of Oregon.

49.

Alternatively, under 28 U.S.C. § 1391(b)(3), there is no district in which an action may otherwise be brought as provided in this section and the Defendants are subject to this Court's personal jurisdiction with respect to this action.

IV.    **ALLEGATIONS COMMON TO ALL COUNTS AND CLAIMS**

A.    **History of Accunity and Zap Doing Business With Each Other As Argil DX**

1.    **Zap and Accunity Join Forces as Argil DX**

50.

This action concerns, in part, Plaintiff Jason Meyer and his business, Plaintiff Zap, and Defendant Ankur Mittal and his business Defendant Accunity.

51.

Both Meyer/Zap and Mittal/Accunity have been, at all relevant times, in the same line of work – design, development, and implementation of digital marketing strategies.

52.

Meyer and Mittal met for the first time in 2012. Meyer at that point had formed and was operating Zap, his own business. Mittal, on the other hand, was working for an unrelated third party.

Page 10 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

53.

By 2014, though Mittal had formed his own business (Accunity), that business was tied, for the most part, to one major contract with a company called 3Share. Meyer tried to help Mittal by referring other work to Accunity.

54.

In 2016, Meyer/Zap and Mittal/Accunity decided to transition from informally assisting each other to formally doing business together.

55.

Their first joint project was for Company X.[3] Meyer had a pre-existing relationship with Company X, and performed initial budgeting and scoping of a project; Meyer, assisted by Mittal, then worked to secure a contract between Zap and Company X ("Client X Project").

56.

Meyer/Zap and Mittal/Accunity agreed to combine labor, costs and revenues on the project, and share in the profits on the Client X Project.

57.

More particularly, Meyer would be the project's head, and would be the client interface. Mittal would provide India-based staffing, which would create greater margins. All such costs would be deducted from revenue.

58.

Mittal travelled to Portland for the Client X Project in October 2016.

_____

[3] Company X (as well as Company Y, Company Z, and Company ABC below) is an actual company, not named here to protect names of clients.

Page 11 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

59.

This travel was on his own behalf and on behalf of Accunity.

60.

Mittal was joined on this trip by Shilpi Mittal.

61.

This travel was on her own behalf and on behalf of Accunity.

62.

Meyer/Zap arranged for the Mittals to stay in a furnished apartment in Oregon; Zap bought all the furnishings for the apartment.

63.

Zap found and paid for an immigration attorney to assist the Mittals in their travels between India and the U.S.

64.

Indeed, Meyer/Zap agreed to a second joint project with Mittal/Accunity, this one for Client Y in January 2017, subject to the same financial arrangements between them as the Client X project.

65.

Mittal again came to Portland in January 2017. He was joined by his wife.

66.

Meyer and Mittal, because things were going so well and because they were in effect spending all of Zap's and Accunity's time working together, began in-depth discussions about

taking their relationship to the next level – promoting a joint brand to generate work from which profits would be shared.

67.

In these discussions, Mittal (speaking for Accunity) made certain representations or assurances which ultimately formed the basis of the Accunity and Zap forging their more formal business relationship.

68.

First, Mittal represented that if Accunity and Zap formalized a relationship, they would share in the profits from that relationship such that Accunity and Zap each had approximately same profit margin on each project, as explained more fully herein.

69.

Second, Mittal represented that Accunity could provide information that would allow Accunity and Zap to achieve the same profit margins on projects.

70.

Third, Mittal represented that if Accunity and Zap went forward together that they would do so for joint benefit, and would not seek work for themselves that would otherwise go to their joint efforts.

71.

In reliance on these assurances, Meyer continued to work with Mittal on the combination of their businesses under the name Argil DX.

72.

In February 2017, Meyer/Zap was given the opportunity to merge with Company ABC. Based on the work performed with Mittal/Accunity, and the progress of their own discussions, and further assurances from Mittal, Meyer/Zap rejected that combination.

73.

After that, the parties worked diligently on the details of their business combination.

74.

On or about February 2, 2017, Meyer and Mittal met at a restaurant in Portland, Oregon to further work out their "Plan and Merger."

75.

These discussions went quite well. Mittal wrote on March 17, 2017, "I think it's just the beginning of a new journey of our partnership so looking forward to this journey."

76.

First, based on work performed by Meyer, they chose the name "Argil DX" (properly "Argil DX" but sometimes seen as "ArgilDX"). In March 2017, Meyer suggested the name "Argil." In April 2017, Meyer suggested what would become the final logo, with the pixels in the "DX" portion of the logo falling away as shown at argildx.com. ("Argil DX," when used in this Complaint, refers to the vehicle through which Zap and Accunity did business together.)

77.

Second, and stemming from the choice of the Argil DX brand, they agreed there would be a unified social media (Facebook, LinkedIn, Twitter, etc.) presence to generate projects for them together (as opposed to one company or the other).

78.

Third, neither Zap nor Accunity (together, the "Component Companies" of Argil DX[4]) would individually seek or perform projects (or any other work) of a type they were seeking together.

79.

Fourth, the Component Companies would continue to share profits as they had already been.  More particularly, they would follow these steps:

   a.  Each of DX's projects would be managed by one of the Component Companies.  That entity would, among other things, make and receive payments from the end client for the project being managed.

   b.  The amount the Component Companies would share would be calculated on a project-by-project basis by deducting a project's expenses (which do not include operating and overhead costs) from its revenues.

   c.  Revenues are the simple half of the equation – they are the amounts that Argil DX received (through one of the Component Companies) from its client for the work performed ("Project Revenues").

   d.  Only one specific class of expenses were to be deducted from Project Revenues: those expenses directly related to the project ("Project Expenses").  For example, the Component Companies would deduct the amounts paid to each of their respective employees and contractors for working on the project, and any third-party costs directly associated with the project.

---

[4] For the sake of clarity:  Meyer's entity is referred to as Zap.  Mittal's entity is referred to as Accunity.  Zap and Accunity doing business together is Argil DX; Zap and Accunity are the Component Companies of Argil DX.

e.  Operating expenses and overhead of the Component Companies were not to be deducted from Project Revenues.

f.  The difference between Project Revenues and Project Expenses ("Proceeds") would then be shared between the Component Companies.

g.  The Component Company that managed the particular project would then account for and pay over to the other Component Company that Component Company's share of the Proceeds from the Project.

h.  With the exception of the Client Y Project, which originated with Accunity in India but had to be run through Zap because it was a U.S.-based client, and projects that may not have been disclosed to Zap by Accunity, Zap originated all projects for Argil DX until 2020.

i.  Zap and Accunity shared profits from 2016 until the end of 2020, when things changed, as described more fully below.

80.

The Component Companies announced their venture to the world in July 2017 by declaring "ZAP Technology Solutions Merges with Accunity Software to form ARGIL DX." (https://www.argildx.com/news/ zap-technology-solutions-merges-with-accunity-software-to-form-argil-dx/, accessed April 9, 2021.)

81.

The Component Companies described the transaction as follows: "American tech company Zap Technology Solutions, LLC (ZTS) has merged with Indian software services provider Accunity Software Pvt. Ltd. to form Argil DX." Id.

82.

Page 16 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

The Component Companies explained that Argil DX was a "newly founded digital experience company."  Id.

83.

Argil DX's organizational charts, written by or at the direction of Mittal, show one entity with two internal structures: the "USA Structure" and the "India Structure."

84.

These same charts depict Meyer as Argil DX's "USA Structure . . . Global CEO and President."

85.

These same charts depict Mittal as Argil DX's "INDIA Structure …President, APAC."[5]

**2.    The Component Companies Follow a Joint Marketing Plan**

86.

Beginning in or around early 2017 Meyer and Mittal had numerous conversations, Skype chats and emails discussing a joint marketing plan to launch the Argil DX brand.

87.

From the announcement of Argil DX's formation to the present day on its website, Meyer and Mittal have been constantly referred to as co-founders, and by the respective titles "Global CEO and President" and "President, APAC."

88.

Argil DX's website shows links to social media platforms Facebook and LinkedIn

89.

---

[5] As used herein, APAC means Asia-Pacific.

Argil DX's Facebook page is located at https://www.facebook.com/argildxglobal/ and presents Zap's location as Argil DX's location.

90.

Argil DX's Facebook page contains a recent example of Mittal holding himself as Argil DX's *co*-founder.

91.

Argil DX's LinkedIn page, just like Argil DX's Facebook page, makes numerous references to Mittal and Meyer as "co-Founders."

**3.     The Component Companies Follow the Joint Proceeds Agreement**

92.

The Client X Project remains active today, generating revenue and profit for the Component Companies.

93.

Since the inception of the Client X Project, and through the filing of this Complaint, the Component Companies have shared in the Proceeds of the Client X Project as set out above.

94.

For the entire duration of the Client Y project, the Component Companies have shared in the Proceeds of the Client Y Project as set out above.

**B.     Meyer Discovers Defendants' Plan to Steal the Business and Brand**

95.

From the inception of the relationship between the Component Companies, funds only flowed in one direction:  from Zap to Accunity.

96.

There were, for a time, understandable reasons for this one-way flow.

97.

First, the Company Y project was initiated by Accunity, but, because it was U.S.-based, had to be booked through Zap.

98.

Second, the COVID pandemic temporarily interrupted the flow of work around the world thus the lack of new work from the U.S. or from India was not surprising.

99.

Third, the venture between the Component Companies was financially justified for Zap, in part, because of access to Accunity's less expensive but skilled workforce.

100.

Workforce specializations relate in whole or in part to Adobe certifications.

101.

Before their relationship with each other, Zap was a certified Adobe Partner, but Accunity was not.

102.

As a result of the work done as a Component Company of Argil DX, Accunity was also able to achieve certification with Adobe.

103.

Further, Argil DX proceeds were used to get much of Accunity's workforce certified at the highest levels of Adobe expertise.

104.

Certification at the company and individual level creates a large competitive advantage.

105.

As 2020 progressed, the lack of any revenue initiated from the Accunity side of the

business became a concern for Meyer.

106.

Meyer raised the issue with Mittal in summer or fall of 2020.

107.

Mittal identified a new project in India with Company Z.

108.

Meyer asked Mittal for Zap's share of the profits from the Company Z project.  Mittal said, in essence, he would have to think about it.

109.

In or around October 2020, Mittal told Meyer that Project Proceeds from the Company Z project would not be shared with Zap.

110.

Mittal followed that declaration of breach with an email seeking to end Accunity's relationship with Zap, in January of 2021.

111.

It was at that point that Meyer looked deeper into Accunity's and Mittal's actions.  What he discovered was that Mittal and Accunity were abusing the business relationship for their own benefit and to the detriment of Meyer and Zap.

112.

Meyer has discovered, through the filing of this Complaint, at least three types of wrongdoing:[6]  an in-progress attempt to hijack the Argil DX trademark and brand; the use of entities other than Accunity to attempt to, and actually, take business that Zap and Accunity were

---

[6] These are in addition to Accunity's refusal to pay over profits from the Company Z project.

to work on together as Argil DX; and, the misreporting of Accunity's costs, which caused Accunity to receive a disproportionate share of profits.

**1.    Hijacking of the Argil DX Trademark and Brand**

113.

Mittal and Accunity have attempted to steal the Argil DX trademark in both India and the U.S.

114.

In or around November 2019, Mittal and Accunity registered the "Argil DX" mark in India ("Indian Trademark Registration"), claiming the mark belongs to Accunity:



115.

In the U.S., Mittal and Accunity used an entity called ADX Consulting to carry out their scheme against the Plaintiffs.

116.

On or about September 27, 2020, Mittal and others (including the non-party co-conspirators identified herein) organized Defendant ADX Consulting under the laws of the State of Texas.

117.

At the time of its incorporation, ADX Consulting identified only one member of management to the State of Texas:  Defendant Mittal.

118.

Accunity owns 75% of the issued shares of ADX Consulting.  Four Accunity employees (including Defendant Mittal and his wife) own the remaining 25%.

119.

Meyer was not notified of the plans to form, the formation of, or the existence of ADX Consulting by Defendants or anyone acting on their behalf.

120.

Neither Meyer nor Zap have any ownership or involvement in ADX Consulting.

121.

Beginning no later than November 2020, using an email address ending "@argildx.com," Mittal and others communicated with Nangia Andersen, a member firm of Andersen Global, with respect to business strategy.

122.

In November 2020, Andersen created a plan for Accunity to circumvent Zap in the United States, which could not be more clear as to objective: "Argil is exploring the feasibility of establishing a foreign holding company in the US in compliance with applicable laws and regulations without material impact on the overall present ownership structure [of Accunity]. and [*sic*] has approached us for the requisite handholding for the externationalisation structuring in a plausible and efficient manner."

123.

Andersen made it clear that its business plan was focused on Accunity's expansion into the U.S. in the same business as Argil DX (as opposed to some other industry or niche), when it used the same descriptors for NewCo as was already being used by Argil DX:

| Argil DX Website | "Argil DX is a future-forward organization focused on digital strategy and design. We deliver comprehensive digital solutions through a balance of industry experience and fresh ideas." |
|---|---|
| Andersen Business Expansion Plan | "Argil is a future forward organization focused on digital strategy design delivering comprehensive digital solutions through a balance of industry experience and fresh ideas." |

124.

On January 28, 2021, ADX Consulting applied for registration of the trademark "Argil DX" (the "Infringing Application"). A true and correct copy of the Infringing Application is attached hereto and marked as Exhibit 1.

125.

Defendant Mittal signed the Infringing Application.

126.

Mittal is listed as ADX Consulting's "Co-Founder" in the Infringing Application.

127.

By signing the Infringing Application, Mittal agreed that:

> The signatory believes that: . . . **the applicant is the owner of the trademark/service mark sought to be registered**; the applicant or the applicant's related company or licensee **is using the mark in commerce** on or in connection with the goods/services in the application, and such use by the applicant's related company or licensee inures to the benefit of the applicant; the specimen(s) shows the mark as used on or in connection with the goods/services in the application; . . . The signatory being warned that **willful false statements and the like are punishable by fine or imprisonment**, …. declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

128.

ADX Consulting and Mittal falsely represented that ADX Consulting had been using the mark "Argil DX" since September of 2016.

129.

The Infringing Application relied on screenshots of the Argil DX website, falsely representing the Argil DX website to be the ADX Consulting website.

130.

Indeed, one of the pages that ADX Consulting claims to be its own work represents that

ADX Consulting has the same office as Argil DX, which is false:

| argildx.com/contact-us/: | Infringing Application: |
|---|---|
| **US Headquarter**<br><br>**Argil DX LLC**<br>3773 Howard Hughes Parkway,<br>Suite 500 South<br>Las Vegas, NV 89169<br><br>**Beaverton Office**<br>4900 SW Griffith Dr,<br>Suite 205<br>Beaverton, OR 97005 | US Headquarters<br><br>Argil DX LLC<br>3773 Howard Hughes Parkway<br>Suite 500 South<br>Las Vegas, NV 89169<br><br>Beaverton Office<br>4900 SW Griffith Dr<br>Suite 205<br>Beaverton, OR 97005<br><br>📞 +1 (888) 554-0502<br><br>✉ info@argildx.com |

131.

Defendants' attempt to take control of the trademark is all the more vexing because the

name and mark of Argil DX was proposed and partially designed by Meyer.

**2.    Stealing Customers**

132.

In addition to ADX Consulting, Defendants used a company named Emertail to steal

customers.

133.

Upon information and belief, Emertail is owned, at least in part, by Defendant Mittal.

Page 26 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT
AND DECLARATORY RELIEF

134.

Plaintiffs have no ownership or involvement with Emertail, and were not made aware by Defendants that Emertail even existed; Plaintiffs discovered Emertail's existence shortly before filing this Complaint.

135.

Emertail operates a website at emertail.com. (The "Emertail Site").

136.

The Emertail Site declares that Emertail is an "Argil Group Company."

137.

Plaintiffs have no knowledge of any "Argil Group" or "Argil Group Compan[ies]."

138.

Sections of the Emertail Site are identical to sections of the Argil DX website.

139.

The Emertail Site claims that Emertail's offices are the same as Argil DX's

Headquarters:

| argildx.com/contact-us/: | emertail.com/contact |
|---|---|
| **US Headquarter**<br><br>**Argil DX LLC**<br>3773 Howard Hughes Parkway,<br>Suite 500 South<br>Las Vegas, NV 89169<br><br>**Beaverton Office**<br>4900 SW Griffith Dr,<br>Suite 205<br>Beaverton, OR 97005 | Sales Offices<br><br>3773 Howard Hughes Parkway<br>Suite 500 South<br>Las Vegas, NV 89169<br><br>4900 SW Griffith Dr<br>Suite 205<br>Beaverton, OR 97005 |

140.

The most blatant example of Defendants' theft of customers concerns Velir, a digital

marketing company in Boston.

141.

In June of 2020, using an "argildx.com" email address and a Portland phone number,

Ayush Bhatia of DX introduced himself to Velir's CTO, Corey Caplette.

142.

In October 2020, Mr, Caplette asked Mr. Bhatia whether Argil DX could assist Velir on a

project.

143.

Mr. Bhatia responded by introducing Mr. Caplette to a company called Emertail, falsely representing Emertail to be a company acquired by Argil DX.

144.

Velir has done no business with Argil DX, but is included in Argil DX's HubSpot, which is an inbound marketing and sales platform that helps companies to attract visitors, convert leads and close customers.

145.

Accunity's rash actions have not been limited to those taken by and through ADX.

146.

Argil DX receives inquiries and leads through its relationship with Adobe, which is a relationship first established by Zap.

147.

On April 7, 2021, a potential customer ("PC1") made an Adobe-driven inquiry to the email address info@argildx.com.

148.

When Mittal saw the inquiry, he directed Meyer's exclusion:  "Can you take this up before Jason chimes in into it?"

149.

To date, no less than four business opportunities of Argil DX have been solicited by or gone to ADX Consulting or Accunity or Emertail, independent of Argil DX.

### 3. Misstated Expenses

150.

Accunity and Zap were to share in the profits of the projects on which they worked.

151.

Thus, if one of the companies reported higher expenses than it actually incurred or reported overhead expenses as Project Expenses, it would receive more profit distribution than it would otherwise be entitled to receive.

152.

Accunity's project expenses were almost entirely the amounts it paid its employees (including things like health insurance and other benefits) for each project.

153.

Accunity identified pay rates for each Accunity employee for purposes of computing Project Expenses.

154.

Upon information and belief, Mittal told Meyer that Accunity paid Accunity's employees more than Accunity actually paid these employees.

155.

As a result, Accunity received a greater share of the Proceeds than it was entitled to receive.

## V. <u>COUNTS AND CLAIMS FOR RELIEF</u>

### <u>Statement Regarding Alternative Direct and Derivative Relief</u>

156.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 155 inclusive, as

though fully set forth herein.

157.

Defendants' actions alleged in this Complaint have harmed the Plaintiffs. Plaintiffs have made alternative allegations with respect to the source of Defendants' duties.

158.

Plaintiffs allege that Defendants owe duties to them directly, and that the breaches of these duties caused damages to them directly and can be recovered directly.

159.

However, Plaintiffs have also alleged that Accunity and Zap have done business together under the name Argil DX.

160.

As a result, Plaintiffs have alleged, in the alternative, that Argil DX constitutes either a general partnership or a joint venture.

161.

If it is found that Argil DX is an entity, then at least some of the relief sought in this Complaint is derivative in nature.

162.

All conditions precedent to the bringing of this action and the derivative claims herein have either occurred, been excused, or would be futile to attempt, including a derivative demand.

163.

Argil DX is a business combination with either two (Zap and Accunity) or four (adding Meyer and Mittal) partner/member/owners.

164.

In either instance, half the owners are pitted against the other half, thus a demand to either half by the other would not cause the entity to do anything to resolve the matter, rendering demand futile.

165.

In addition, Plaintiffs have made numerous and repeated efforts to address the actions described in this Complaint, with no reaction from the Defendants.

**FIRST CLAIM FOR RELIEF:  TRADEMARK AND COMPETITION CLAIMS**

**Count One**

**(Violation of Section 43(a) of the Lanham Act)**

**Against Mittal and ADX Consulting**

**Directly and, Alternatively, Derivatively**

166.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 165 inclusive, as though fully set forth herein.

167.

ADX Consulting's Infringing Application, signed by Mittal, is likely to deceive and confuse consumers as to the origin, source, sponsorship, or affiliation of ADX Consulting's goods and services and is likely to cause consumers to believe, contrary to fact, that ADX Consulting's goods and services are affiliated with or sponsored by Plaintiffs or Argil DX.

168.

Mittal's and ADX Consulting's conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of ADX Consulting with Argil DX.

169.

Mittal's and ADX Consulting's conduct constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

170.

As a direct and proximate result of Mittal's and ADX Consulting's conduct as alleged herein, Plaintiffs have suffered and, unless enjoined by this Court, will continue to suffer irreparable harm.

171.

Plaintiffs have no remedy at law and are entitled to and seeks, among other relief, injunctive relief and an award of actual damages, ADX Consulting's profits, reasonable attorneys' fees, and costs of the action pursuant to 15 U.S.C. §§ 1116, 1117, together with prejudgment and post judgment interest.

### *Alternative Derivative Allegations*

172.

As a direct and proximate result of Mittal's and ADX Consulting's conduct as alleged herein, Argil DX has suffered and, unless enjoined by this Court, will continue to suffer irreparable harm.

173.

Argil DX has no remedy at law and is entitled to and seeks, among other relief, injunctive relief and an award of actual damages, ADX Consulting's profits, reasonable attorneys' fees, and costs of the action pursuant to 15 U.S.C. §§ 1116, 1117, together with prejudgment and post judgment interest.

**Count Two**

**(Oregon Common Law Unfair Competition and Trademark Infringement)**

**Against Mittal and ADX Consulting**

**Derivatively and, Alternatively, Directly**

174.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 173 inclusive, as though fully set forth herein.

175.

As a result of its continuous use as demonstrated by, among other things, the Infringing Application both throughout the United States, and specifically within the State of Oregon, Argil DX owns valid, enforceable, and subsisting common law trademark rights in the marks in the Infringing Application throughout the United States and in Oregon.

176.

Mittal and ADX Consulting's use in commerce of the marks in the Infringing Application is likely to (i) cause confusion, mistake and/or deception, (ii) give the false and misleading impression that the goods and services offered or sold by ADX Consulting and Argil DX originate from or are under the control of a single source, or are endorsed by the DX, or (iii) give the false and misleading impression that ADX Consulting is in some way associated with or

Page 34 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

connected to Plaintiffs or DX, in violation of Oregon's common law unfair competition and trademark laws.

177.

Mittal and ADX Consulting's acts are being committed with actual knowledge of Argil DX's prior and substantial use and prior rights in marks in the Infringing Application, and without regard for the likelihood of confusion to the public as a result of its activities.

178.

Mittal and ADX Consulting's acts are willful and with intent to trade on the goodwill associated with the marks in the Infringing Application to the irreparable injury of Argil DX.

179.

As a direct and proximate result of Mittal's and ADX Consulting's unlawful activities, Argil DX (and Plaintiffs on behalf of Argil DX) is entitled to injunctive relief to restrain further acts of infringement and unfair competition, and to recover any damages proven to have been caused by Mittal's and ADX Consulting's unlawful acts, and to recover enhanced damages based upon Mittal's and ADX Consulting's willful and intentional activities.

***Alternative Direct Allegations***

180.

To the extent Argil DX is not an entity capable of owning such rights, then such rights are beneficially owned by Zap and Meyer; both of which have been harmed by Mittal and ADX Consulting's acts as described in this Count Two of this First Claim for Relief.

181.

Because of this unfair competition, Accunity and those acting in concert with Accunity have asserted rights in the Argil Brands (defined below) with in the interest of equity and justice

should, if Argil DX is not deemed to be an entity under the Sixth Claim for Relief (Declaratory

Judgment), belong wholly to Zap.

## SECOND CLAIM FOR RELIEF

### (Unlawful Trade Practices in Violation of ORS §§ 646.608)

### Against Mittal and ADX Consulting (Derivatively)

182.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 181 inclusive, as

though fully set forth herein.

183.

Mittal's and ADX Consulting's unauthorized use in commerce of the marks in the

Infringing Application is likely to cause confusion or misunderstanding as to the source,

sponsorship, approval, or certification of ADX Consulting's goods and services, and as to

affiliation, connection, or association with, or certification by, Argil DX.

184.

Mittal's and ADX Consulting's conduct constitutes unfair and deceptive acts or practices

in the course of business, trade or commerce in violation of Oregon's Unlawful Trade Practices

Act, ORS §§ 646.608.

185.

Mittal's and ADX Consulting's unauthorized use of the marks in the Infringing

Application has caused and is likely to continue causing substantial injury to the public and to

Zap, Meyer and Argil DX (or Plaintiffs on behalf of Argil DX); Plaintiffs are entitled to

injunctive relief and to recover damages, costs and reasonable attorneys' fees.

186.

Because of these unfair trade practices, Accunity and those acting in concert with Accunity have asserted rights in the Argil Brands (defined below) with in the interest of equity and justice should, if Argil DX is not deemed to be an entity under the Sixth Claim for Relief (Declaratory Judgment), belong wholly to Zap.

### THIRD CLAIM FOR RELIEF

### (Intentional Interference With Economic Relations)

### Against All Defendants

### Derivatively and Directly

187.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 186 inclusive, as though fully set forth herein.

188.

Argil DX maintains detailed contacts for its customers and potential customers in software known as HubSpot, and as generated through the Adobe Partnership Program leads.

189.

Argil DX's relationships with its customers and potential customers often form the basis for prospective economic relationships.

190.

Argil DX has ongoing relationships and contacts with entities in its field of business which it maintains to create revenue in the future.

191.

Because of its actions with respect to Velir (and others), Defendants are interfering with

these relationships.

192.

Defendants' actions were intentional and undertaken with the knowledge of the relationships with Zap, Meyer and Argil DX.

193.

Defendants – as demonstrated by among other things the attempted theft of Argil DX's trademark and using Argil DX's HubSpot platform to steal leads – has been acting through improper means or with an improper purpose.

194.

The interference has caused damage to Argil DX – the loss of particular contracts and sales.

195.

Defendants are not parties to Argil DX's prospective economic relationships and contracts with which it interfered.

196.

These wrongful acts damaged Argil DX, and by consequence, Meyer and Zap, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF: BREACHES OF AGREEMENTS**

197.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 196 inclusive, as though fully set forth herein.

198.

The relationship between Meyer and Zap, on the one hand, and Mittal and Accunity, on

the other, gives rise to legal duties between them.

199.

Regardless of how the relationship between them is characterized, the duties of one side of the relationship to the other remain the same.

200.

In this Fourth Claim for Relief, Plaintiffs present in the alternative each of the ways the relationship can be legally characterized, with the exception of Count Six (Breach of the Implied Duty of Good Faith and Fair Dealing), which is a standalone count.

**Count One**

**Breach of Oral Agreement**

**Against Accunity and Mittal (Directly)**

201.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 200 inclusive, as though fully set forth herein.

202.

As alleged in this Complaint, Mittal and Accunity, on the one hand, and Meyer and Zap, on the other hand, are parties to a contract.

203.

Among other things, the contractual obligations between them include doing business under the name Agril DX and sharing in the profits of that business.

204.

The parties have affirmed these obligations to each other by performing them in part or in whole.

Page 39 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

205.

As alleged in this Complaint, Mittal and Accunity have breached those obligations.

206.

These breaches have caused damage to Plaintiffs in an amount to be proven at trial.

**Count Two**

**Breach of Contract Implied in Fact / Implied Contract (in the Alternative)**

**Against Accunity and Mittal (Directly)**

207.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 206 inclusive, as though fully set forth herein.

208.

By reason of the factual allegations of this Complaint, Mittal and Accunity, on the one hand, and Meyer and Zap, on the other hand, engaged in a course of dealing which imply the existence of contractual obligations between them.

209.

Among other things, the contractual obligations between them include doing business under the name Argil DX and sharing in the profits of that business.

210.

As alleged in this Complaint, Mittal and Accunity have breached those obligations.

211.

These breaches have caused damage to Plaintiffs in an amount to be proven at trial.

## Count Three

### Breach of Contract Implied in Law / Quasi Contract (in the Alternative)

### Against Accunity and Mittal (Directly)

212.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 211 inclusive, as though fully set forth herein.

213.

Based on the allegations of this Complaint, reasons of justice require the finding that a contract exists between Mittal and Accunity, on the one hand, and Meyer and Zap, on the other.

214.

Among other things, the contractual obligations between them include doing business under the name Argil DX and sharing in the profits of that business.

215.

As alleged in this Complaint, Mittal and Accunity have breached those obligations.

216.

These breaches have caused damage to Plaintiffs in an amount to be proven at trial.

## Count Four

### Breach of Agreement – Partnership (in the Alternative)

### Against Accunity and Mittal (Directly)

217.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 216 inclusive, as though fully set forth herein.

218.

As alleged in this Complaint, Argil DX is a partnership.

219.

Argil DX consists of partners Accunity and Zap.

220.

To the extent consistent with the evidence adduced in this action, Meyer and Mittal may

also be partners in Argil DX.

221.

Argil DX was formed by at least two legal persons to be carried on as a business for

profit.

222.

The partners of Argil DX had a right to receive, and actually received, a share of Argil

DX's profits.

223.

The partners of Argil DX expressed their intent to be partners, and expressed their actual

existence as partners.

224.

The partners of Argil DX had the right to control the business of Argil DX.

225.

The partners of Argil DX contributed money, goods, services, and legal rights to the

business of Argil DX.

226.

Zap and Accunity received profits from the business of Argil DX.

227.

Accunity breached its partnership obligations by, among other things, not meeting its financial commitments to Argil DX, competing with Argil DX, enabling ADX Consulting to compete with Argil DX, taking for its own trademarks belonging to Argil DX, and interfering with Argil DX's economic relationships.

228.

Accunity repudiated its partnership obligations by Mittal's statement that there was no partnership.

229.

Accunity's actions were taken by Mittal; however, to the extent Mittal is an individual partner and acted on his own behalf, Mittal breached his partnership obligations.

230.

Plaintiffs have suffered financial harm from these actions and should be compensated for that harm in an amount proven at trial.

**Count Five**

**Breach of Agreement – Joint Venture (In the Alternative)**

**Against Mittal and Accunity (Directly)**

231.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 230 inclusive, as though fully set forth herein.

232.

If Argil DX is not found to be a partnership under Count Four of this Fourth Claim for Relief, then, for the same reasons asserted in Count Four, Argil DX is a joint venture.

Page 43 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

233.

The joint venture was breached for the same reasons as set out in Count Four.

234.

Plaintiffs have suffered financial harm from these actions and should be compensated for that harm in an amount proven at trial.

**Count Six**

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

**Against Mittal and Accunity (Directly)**

235.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 234 inclusive, as though fully set forth herein.

236.

Whether viewed as a partnership or a joint venture, or a contract, implied contract, or quasi-contract, there is an agreement between the parties to do business as Argil DX.

237.

There is a duty of good faith and fair dealing to facilitate performance and enforcement of that agreement.

238.

This duty effectuates the parties' objectively reasonable expectations under the agreement.

239.

For example, in violation of the duty of good faith and fair dealing, Defendants have used Argil DX's brand, trademark and customer contacts to benefit themselves, ADX Consulting and

other co-conspirators.

240.

The actions of the Defendants as pled in this Complaint show that Defendants have breached this duty.

241.

Plaintiffs have suffered financial harm from these actions and should be compensated for that harm in an amount proven at trial.

242.

Because of these violations of the duty of good faith and fair dealing, Accunity and those acting in concert with Accunity have asserted rights in the Argil Brands (defined below) with in the interest of equity and justice should, if Argil DX is not deemed to be an entity under the Sixth Claim for Relief (Declaratory Judgment), belong wholly to Zap.

### FIFTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### Against Mittal and Accunity (Derivatively)

243.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 242 inclusive, as though fully set forth herein.

244.

Plaintiffs, below, have identified two different legal sources of fiduciary duties: those arising from the existence of an entity, and those arising from the nature of the relationship between the parties (common law).

245.

The two bases are pled in the alternative to each other.

## Count One

## Breach of Fiduciary Duty of Loyalty

## Against Mittal and Accunity (Directly and Derivatively)

246.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 245 inclusive, as though fully set forth herein.

247.

By reason of the existence of the partnership or joint venture of Argil DX described herein, Mittal and Accunity were fiduciaries, owing fiduciary duties to Plaintiffs and Argil DX.

248.

These fiduciary duties include the fiduciary duty of loyalty.

249.

Mitall and Accunity have breached their fiduciary duties to Plaintiffs and Argil DX in one or more of the following ways:

a. Mittal and Accunity made misrepresentations to Plaintiffs concerning Project Expenses;

b. Mittal and Accunity failed to disclose material facts to Plaintiffs;

c. Defendants pursued business opportunities belonging to Argil DX;

d. Defendants are attempting to steal trademark rights belonging to Argil DX;

e. Defendants have diverted Argil DX's money and assets to themselves and ADX Consulting and/or other co-conspirators;

    f.   Defendants have engaged in transactions and set up businesses that create a conflict of interest with Argil DX.

### 250.

Defendants' breaches of fiduciary duty damaged Plaintiffs and Argil DX in an amount to be proven at trial.

### 251.

Because of these violations of fiduciary duties, Accunity and those acting in concert with Accunity have asserted rights in the Argil Brands (defined below) with in the interest of equity and justice should, if Argil DX is not deemed to be an entity under the Sixth Claim for Relief (Declaratory Judgment), belong wholly to Zap.

**Count Two**

**Breach of Common Law Fiduciary Duty**

**Against Mittal and Accunity (Directly and Derivatively)**

### 252.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 251 inclusive, as though fully set forth herein.

### 253.

Outside of any partnership or joint venture relationship, Meyer and Zap, on the one hand, and Mittal and Accunity, on the other, had a relationship of trust and confidence between them, also giving rise to fiduciary duties.

### 254.

In violation of these fiduciary duties, Mittal and Accunity have harmed Plaintiffs and Argil DX by engaging in the acts alleged herein, including but not limited to the conduct alleged

in Count One of this Fifth Claim for Relief.

### 255.

These breaches of fiduciary duty damaged Plaintiffs and Argil DX in an amount to be proven at trial.

### 256.

Because of these violations of fiduciary duties, Accunity and those acting in concert with Accunity have asserted rights in the Argil Brands (defined below) with in the interest of equity and justice should, if Argil DX is not deemed to be an entity under the Sixth Claim for Relief (Declaratory Judgment), belong wholly to Zap.

### SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment – 28 U.S.C. §2201)

### Against All Defendants (Directly)

### 257.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 256 inclusive, as though fully set forth herein.

### 258.

There is an actual controversy between the parties as to the nature and existence of Argil DX and their respective rights relating to Argil DX, and to each other, with regard to Argil DX.

### 259.

The declaration of rights sought in this count is not exclusive to the other adequate remedies sought in this action.  Indeed, as explained below, because of the alternative nature of this Complaint, the declaration sought in this Claim for Relief is not essential to providing the relief sought by Plaintiffs

260.

Specifically, Plaintiffs ask this Court to declare that:

a.  Argil DX is a Partnership (or in the alternative a Joint Venture) capable of owning
    rights and property in its own name;

b.  Argil DX's members are Zap and Accunity (or in the alternative, including Meyer
    and Mittal);

c.  Argil DX owns marks and brands including but not limited to Argil DX, ArgilDX,
    and all of the domains on the list attached as Exhibit 2, ("Argil Brands"), which
    ownership began at the earliest first use in trade among any of these marks;
    alternatively, in the event this Court finds that there was no partnership or joint
    venture, the marks and brands of Argil DX and ArgilDX and the domain names on
    Exhibit 3 belong to Zap;

d.  Argil DX has been an entity capable of owning tangible and intangible, and real and
    personal, property since (inception date);

e.  The property owned by Argil DX will be determined by the Accounting sought in the
    Seventh Claim for Relief;

f.  Zap and Accunity are to share the profits of Argil DX projects, either:

    a.  As shown by the agreements between the parties, course of dealing and
        evidence, or

g.  Alternatively, if no agreements can be found, in a manner that is just and equitable.

261.

Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to the declarations sought in this

Sixth Claim for Relief.

Page 49 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT
AND DECLARATORY RELIEF

262.

Pursuant to FRCP 57, Plaintiffs request a "speedy hearing" of this Sixth Claim for Relief.

**SEVENTH CLAIM FOR RELIEF: REMEDIES**

**Count One**

**Statutory and Common Law Accounting (Remedy)**

**Against All Defendants (Directly and Derivatively)**

263.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 262 inclusive, as though fully set forth herein.

264.

Defendants owe Plaintiffs duties – both fiduciary and contractual – which, when breached, call upon Defendants to account to Plaintiffs for all transactions and projects involving Argil DX or its brand, in any way, involving customers obtained through Argil DX's HubSpot or Adobe Partnership leads, and profits and losses related to the informal business arrangement, partnership or joint venture known as Argil DX.

265.

Plaintiffs are entitled to an accounting of, among other things, all assets, liabilities, income, expenses, of Argil DX, Accunity, and ADX Consulting, at the expense of Defendants.

266.

If the declaration sought by the Sixth Claim for Relief is granted, this accounting shall proceed along the following general lines, but clarified to meet the facts and circumstances at the time relief is granted:

a.  Pursuant to FRCP 53(a)(1)(B)(2), this Court shall appoint a special master or other

Page 50 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

third-party neutral to oversee the accounting.

b.  The accounting shall consist of a thorough review and audit of the books and records of Accunity and those acting in concert with Accunity to determine:

(1)  All of Accunity's revenues from 2016 to present;

(2)  All of Accunity's expenses, divided by fixed costs and project-only costs, from 2016 to present.

(3)  Determine, consistent with the relief granted by this Court, whether any of Accunity's revenues should have been paid over to Zap through Argil DX;

(4)  Determine, consistent with the relief granted by this Court, whether Accunity accurately stated project expenses, and if not, determine the amount that should have been paid over to Zap through Argil DX;

(5)  Determine the purchase price of any property purchased by Accunity, and if such property was purchased with funds that should have been paid by Accunity to Zap through Argil DX, implement the constructive trust relief sought below.

267.

Alternatively, if the declaration sought by the Sixth Claim for Relief is not granted, this accounting shall proceed along the following general lines, but clarified to meet the facts and circumstances at the time relief is granted:

a.  Pursuant to FRCP 53(a)(1)(B)(2), this Court shall appoint a special master or other third-party neutral to oversee the accounting.

b.  The accounting shall consist of a thorough review and audit of the books and records of Accunity and those acting in concert with Accunity to determine:

(1)  All of Accunity's revenues from 2016 to present;

Page 51 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

(2) All of Accunity's expenses, divided by fixed costs and project-only costs, from 2016 to present.

(3) Determine, consistent with the relief granted by this Court, whether any of Accunity's revenues should have been paid over to Zap;

(4) Determine, consistent with the relief granted by this Court, whether Accunity accurately stated Project Expenses, and if not, determine the amount that should have been paid over to Zap;

(5) Determine the purchase price of any property purchased by Accunity, and if such property was purchased with funds that should have been paid by Accunity to Zap; implement the constructive trust relief sought below.

(6) With respect to the Argil Brands, proceed under the constructive trust relief sought below.

## Count Two

## Constructive Trust (Remedy)

### Against All Defendants (Directly and Derivatively)

268.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 267 inclusive, as though fully set forth herein.

269.

Based on the foregoing allegations, Defendants hold legal title to property, including cash and assets, that was wrongfully acquired from, or deprived from, Plaintiffs (either directly or derivatively) and Argil DX.

270.

Despite holding such legal title, Defendants cannot enjoy the benefit of such property, including cash and assets, without violating established principles of equity with respect to Plaintiffs and Argil DX.

271.

Defendants therefore hold, and have held, such property in constructive trust for Plaintiffs and Argil DX.

272.

Defendants should be enjoined from further use or transfer of such property, and ordered to deliver such property to Plaintiffs (or at their designation, Argil DX).

273.

If the declaratory relief sought in the Sixth Claim for Relief is granted, then all funds and property earned or held by Accunity that should have been paid through Argil DX to Zap shall be identified by the Special Master and, with respect to tangible property, shall be accounted for the higher of purchase price or current value. The Special Master shall designate a total dollar figure, and Accunity shall be deemed to hold those funds in constructive trust with the sole obligation to deliver those funds to Argil DX, for payment over to Zap. Finally, the Special Master shall implement the constructive trust on any rights that Accunity has claimed to the Argil Brands to be transferred to Argil DX.

274.

If the declaratory relief sought in the Sixth Claim for Relief is not granted, then the Special Master shall proceed identically to the preceding paragraph, with two exceptions. First, the constructive trust will be directly for the benefit of Zap, as opposed to flowing through Argil

DX.  Second, and pursuant to the allegations of the First through Fifth Claims for Relief, the Special Master shall deem any rights or ownership that Accunity has claimed to the Argil Brands to be transferred to Zap.

**Count Three**

**Conspiracy (Remedy)**

**Against All Defendants (Directly and Derivatively)**

275.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 274 inclusive, as though fully set forth herein.

276.

The Defendants and others, described below as Non-Party Conspirators, have combined in a common scheme, plan or design to accomplish by concert an unlawful purpose, to accomplish a purpose not in itself unlawful by unlawful means, or to accomplish an unlawful purpose by unlawful means.

277.

Based on the facts alleged in this Complaint, including the character of the acts taken by Defendants, the relation between and among Defendants (and others) and other facts and circumstances suggestive of concerted action between and among Defendants (and others), Defendants (and others) are conspirators with each other and against the Plaintiffs and Argil DX.

278.

The conspiracy between Defendants (and others) aggravates the wrongs complained of by Plaintiffs in this action and entitles Plaintiffs to recover against each of the Defendants for the actions of any Defendants (or others).

279.

There are individuals and entities who are associated with or controlled by the Defendants (the "Non-Party Conspirators").

280.

At this time Plaintiffs do not have sufficient knowledge of the Non-Party Conspirators' activities to be able to name them as Defendants. However, each Non-Party Conspirator's general role as a conspirator is evident from evidence.

281.

The following individuals and entities are Non-Party Conspirators, whose actions and omissions are imputable to Defendants:

   a.   CXMOJO Consulting Private Limited, f/k/a ArgilDX Services Private Limited;

   b.   Emertail (or the actual entity who operates emertail.com)

   c.   Shilpi Mittal;

   d.   Nilanjan Mukherjee;

   e.   Ayush Bhatia;

   f.   Pankaj Bansal.

**Count Four**

**Attorneys Fees (Remedy)**

**Against All Defendants**

282.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 281 inclusive, as though fully set forth herein.

283.

For their derivative claims, Plaintiffs are entitled to their attorney fees, costs and disbursements under the "substantial benefit doctrine" explained in *Hockstre v. Golden B. Products, Inc.*, 77 Or App 104 (1985), *rev den*, 300 Or 563 (1986) and *Crandon Capital Partners v. Shelk (Crandon II),* 342 Or 555 (2007).

284.

For their trademark and competition claims, Plaintiffs are entitled to their attorney fees, costs and disbursements under 15 U.S.C. §§ 1116, 1117.

**Count Five**

**Punitive Damages (Remedy)**

**Against All Defendants**

285.

Plaintiffs re-allege and incorporate by reference paragraphs 1 through 284 inclusive, as though fully set forth herein.

286.

The allegations of this Complaint include allegations of intentional and deceptive behavior.

287.

Defendants have acted willfully and with malice.

288.

Defendants have shown a reckless indifference to a highly unreasonable risk of harm to Argil DX and Plaintiffs.

289.

Defendants have shown an outrageous indifference to a highly unreasonable risk of harm to Argil DX and Plaintiffs.

290.

Defendants have acted with a conscious indifference to the welfare of Argil DX and the Plaintiffs.

291.

Plaintiffs seek an award of punitive damage in the range of damages that a rational juror would be entitled to award based on the record as a whole and the applicable law.

VI.    **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ask for judgment, jointly and severally, against Defendants as follows, as conspirators, as follows:

A.    Damages in an amount to be proven at trial under, and depending upon any election of remedies, including statutory damages and treble damages, as appropriate;

B.    A declaration of the rights and duties of the parties with respect to Argil DX;

C.    For an order instructing the United States Patent and Trademark Office to cancel and deny the Infringing Application;

D.    For an order preliminarily and permanently enjoining Defendants, their employees, agents, officers, directors, members, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them:

   i.    From using the "ArgilDX" or "Argil DX" marks or any other trademarks, trade names, logos, and other identifiers that are the same or confusingly similar to Argil DX or that tend to create or continue any link in consumers'

Page 57 – COMPLAINT FOR TRADEMARK INFRINGEMENT, BREACH OF CONTRACT AND DECLARATORY RELIEF

minds between Defendants and the Argil DX mark, in any manner or form, in connection with any goods or services, and

    ii.    From representing or suggesting, by any means whatsoever, directly or indirectly, that Defendants, any goods or services offered by Defendants, or any activities undertaken by Defendants, are sponsored or approved by, or are or have at any time been associated, affiliated, or connected with Argil DX in any way;

E.  For an order directing Defendants to immediately transfer ownership of the www.argildx.com, www.argildx.us, www.argildx.org and www.argildx.net domains to Plaintiffs and all log-in credential associated with such;

F.  For an order directing Defendants to immediately transfer ownership of the Indian Trademark Registration to Plaintiffs or Argil DX;

G.  An accounting;

H.  Imposition of a constructive trust;

I.  Punitive damages;

J.  Attorney's fees, costs and expenses of litigation; and

K.  All other relief that the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

Dated:  April 23, 2021

ROSE LAW FIRM, P.C.

By:  *s/ Heather E. Harriman*
Heather E. Harriman, OSB #992368
hharriman@rose-law.com
**ROSE LAW FIRM, P.C.**
5200 Meadows Road, Suite 150
Lake Oswego, OR 97035
Telephone:  (503) 278-7618
Facsimile:   (503) 296-5827
            *Attorneys for Plaintiffs*