IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON MEYER, an individual;                          No. 3:21-cv-00621-HZ
ARGIL DX LLC f/k/a ZAP
TECHNOLOGY SOLUTIONS LLC, a                           OPINION & ORDER
Nevada limited liability company; and
ARGIL DX, putative partnership,

                    Plaintiffs,

        v.

ANKUR MITTAL, an individual; AXENO
CONSULTING PVT. LTD. f/k/a
ARGILDX CONSULTING PVT. LTD.
f/k/a ACCUNITY SOFTWARE PVT.
LTD., an Indian private company; and
ADX CONSULTING INC., a Texas
corporation,

                    Defendants.

Katharine Shepherd
Adam Rose
Rose Law Firm, P.C.
5200 SW Meadows Rd, Ste 150
Lake Oswego, OR 97035

Eric Lang
The Lang Legal Group LLC

1 – OPINION & ORDER

2566 Shallowford Rd Ste 104 #230
Atlanta, GA 30345

      Attorneys for Plaintiffs

Sara Cotton
Nika Aldrich
Mario Delegato
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Ave, Ste 1900
Portland, OR 97204

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

Defendants move to compel production of documents and information relating to

Plaintiff Jason Meyer's use of certain disputed emails in this litigation. For the following

reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

The Court extensively outlined the factual and procedural history of this case in its

Opinion and Order denying Defendants' Motion for Partial Summary Judgment and for

Sanctions. ECF 164. Defendants' present motion relies on the same underlying facts. In brief, the

parties previously collaborated on business endeavors; it is disputed whether that collaboration

constituted a partnership. *Id.* at 2-4. The parties shared a server provided through Plaintiff Zap's

Microsoft 365 account to send, receive, and store emails for that collaboration. *Id.* at 5. The

parties' business relationship later soured, and Defendant Mittal emailed Defendant Meyer on

January 20, 2021, expressing his intent to end the collaboration. *Id.* at 8-9. On or about January

25, 2021, Plaintiff Meyer backed up the email accounts provided through Zap's Microsoft 365

account, which included the email accounts of employees of Defendant Axeno. *Id.* at 9-10. He

2 – OPINION & ORDER

set up the backups to be taken automatically once per day and stores them on an external hard drive. *Id.* at 10.

On April 23, 2021, Plaintiffs sued Defendants. Compl., ECF 1. Defendants alleged counterclaims for violation of the Stored Communications Act ("SCA") and common-law invasion of privacy based on the email downloads. Ans. to First Am. Compl. ¶¶ 344-353, ECF 59. The Court later issued an order restricting Plaintiffs' right to view the email backups (the "disputed emails"). ECF 144. Those emails are the subject of the present Motion to Compel. Defendants previously moved for partial summary judgment on their counterclaim alleging that Plaintiff Meyer violated the SCA when he downloaded their emails. Def. Mot. Summ. J., ECF 106. Defendants also moved for sanctions based on the same conduct. *Id.* The Court denied that motion on April 17, 2023. Op. & Ord., ECF 164. The present dispute was brought to the Court's attention the same day.

Defendants' Motion to Compel was initially briefed through letters to the Court, with formal briefing filed after a discovery conference. Defendants seek to compel a response to an interrogatory, a request for admission, and a request for production, all relating to Plaintiffs' use of the disputed emails. Defendants' Interrogatory No. 14 states: "Explain in detail each use You made of any information learned from Your review of emails from the Indian Defendants' argildx.com email accounts." Aldrich Letter 1 (Apr. 17, 2023). The Court previously ordered Plaintiffs to answer, subject to any claims of privilege. Order, ECF 144. Defendants' Request for Admission ("RFA") No. 14 states: "Admit that You used emails referenced in Request for Admission No. 12 [the disputed emails] to build evidence for this case." Aldrich Letter 2. Defendants' Request for Production ("RFP") No. 79 requests "[a]ll documents and communications referring or relating to Plaintiffs' gathering of or access to documents and

communications on or through the shared Microsoft email server." *Id.* Ex. E at 3. After receiving

initial and supplemental letters from the parties, the Court held a discovery conference on May

24, 2023. ECF 171. The Court permitted the parties to file supplemental briefing. Def. Supp. Br.,

ECF 172; Pl. Supp Br., ECF 175.

## STANDARDS

The scope of discovery in civil cases is broad. In general, "[p]arties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "On notice to other parties and

all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R.

Civ. P. 37(a)(1). A motion to compel may be filed if "a party fails to answer an interrogatory

submitted under Rule 33" or "fails to produce documents or fails to respond that inspection will

be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P.

37(a)(3)(B)(iii), (iv). "[A]n evasive or incomplete disclosure, answer, or response must be treated

as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). A party seeking a response

to a request for admission "may move to determine the sufficiency of an answer or objection."

Fed. R. Civ. P. 36(a)(6).

## DISCUSSION

Defendants argue that the requested documents and information are (1) not protected by

the attorney-client privilege, (2) not protected by the work product doctrine, and (3) subject to

the crime-fraud exception. The Court concludes that the work product doctrine protects most the

materials responsive to Defendants' requests. Defendants have not met the standard to compel

disclosure of work product, and the crime-fraud exception does not apply.

I.        **Attorney-Client Privilege**

"The party asserting attorney-client privilege bears the burden of proving each element of

an eight-part test used to determine whether information is covered by the attorney-client

privilege[.]" *A.F. v. Providence Health Plan*, 173 F. Supp. 3d 1061, 1074 (D. Or. 2016). Those

elements are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his insistence permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the protection be
> waived.

*Id.* (citing *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)). The attorney-client

privilege protects communications, not underlying facts. *Murdoch v. Castro*, 609 F.3d 983, 995

(9th Cir. 2010) ("'The privilege only protects disclosure of [the] communications [themselves]; it

does not protect disclosure of the underlying facts,' so long as the underlying facts can be proven

without resort to the privileged materials.") (quoting *Upjohn Co. v. United States*, 449 U.S. 383,

395 (1981)).

Defendants argue that nothing covered in their discovery requests is privileged because

they seek only facts about how the documents were used. Aldrich Letter 3. Plaintiffs correctly

point out that the case Defendants cite for the proposition that whether and how a document has

been used is not privileged, *Dolby Labs. Licensing Corp. v. Adobe, Inc.*, 402 F. Supp. 3d 855,

863 (N.D. Cal. 2019), does not actually state this proposition. *See* Aldrich Letter 3; Lang Letter 2

(Apr. 20, 2023). But to the extent Defendants request something other than communications, the

attorney-client privilege will not apply. Defendants suggest that Plaintiffs can answer RFA 14

without producing any communications because the RFA only requests underlying facts. Aldrich

Letter 3. RFP 79, on the other hand, explicitly requests communications. Defendants point out

that Plaintiffs have not produced a privilege log identifying any communications. *Id.* To the extent that Plaintiffs seek to claim attorney-client privilege for communications that would be responsive to RFP 79, the Court directs them to produce a privilege log. The Court now turns to the work product doctrine, the main focus of the parties' briefing.

## II.      Work Product Protection

The parties focus on whether the work product doctrine protects the information and documents sought in Defendants' discovery requests. Federal Rule of Civil Procedure 26 partially codifies the work product doctrine. Rule 26 provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). *See also In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). The work product doctrine is broader than Rule 26, as it also covers intangible things such as an attorney's mental impressions. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 868 n.2 (9th Cir. 2014); *Hickman v. Taylor*, 329 U.S. 495, 509 (1947) ("We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney[.]"). The party claiming work product protection bears the burden of showing it applies. *Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010).

A party seeking to discover fact work product may do so if the materials "are otherwise discoverable under Rule 26(b)(1)" and the party seeking to discover the materials "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). But "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The Ninth Circuit has "concluded that opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (emphasis in original).

A.       Anticipation of Litigation

Defendants argue that the work product doctrine does not protect Plaintiff Meyer's pre-litigation uses of the disputed emails. Def. Supp. Br. 1. Plaintiff Meyer testified at his deposition that he first anticipated litigation after Defendant Mittal rejected a memorandum of understanding from Plaintiff Meyer. Burnside Decl. Ex. A ("Meyer Dep.") 363:12-22, ECF 173-1. Defendants state that this was on March 19, 2021. Def. Supp. Br. 1 n.1. Plaintiffs do not dispute Defendants' characterization of the timeline on this issue. Pl. Supp. Br. 7. Thus, for the period between when Plaintiff Meyer first downloaded the emails in January 2021 and when Defendant Mittal rejected the memorandum of understanding on March 19, 2021, the work product doctrine does not apply because Plaintiff Meyer did not use the disputed emails in anticipation of litigation.

As Plaintiffs point out, they already provided considerable information surrounding the disputed emails. Pl. Supp. Br. 2, 6 n.8. But if there is material they have not provided that is not otherwise protected, Plaintiffs are to produce such responsive information and documents for the period between January 2021 and March 19, 2021, to the extent they are able. This order does not alter the Court's Order of February 3, 2023, which restricts Plaintiffs' ability to view the disputed emails. ECF 144. Neither party has moved to lift or modify that Order. The Court denies Defendants' request to order production of documents showing Plaintiff Meyer's use of

the disputed emails up to the date the Complaint was filed. If Plaintiff anticipated litigation by

March 19, 2021, as Defendants' motion indicates and Plaintiffs agree, the work product doctrine

applies after that date. For the period after March 19, 2021, Defendants must show that they meet

the standard to compel disclosure of work product.

        B.      Opinion Work Product

        Defendants assert that they seek primarily fact work product, which is less protected. Def.

Supp. Br. 3. The Court agrees with Plaintiffs that Defendants request primarily opinion work

product. Pl. Supp. Br. 2. Defendants' discovery requests ask Plaintiffs to describe their use of the

disputed emails and to produce documents showing how they used the disputed emails. In their

letter to the Court initiating the Motion to Compel, Defendants explained that RFP 79 seeks

"notes, charts, timelines, drafts of the Complaint, drafts of discovery requests, communications

with counsel concerning the documents, and the like." Aldrich Letter 5. Defendants' own

explanation of their discovery requests to this Court establishes that Defendants seek opinion

work product because they seek documents showing how Plaintiffs evaluated the evidence to

build their case. *See Hickman*, 329 U.S. at 509 ("We are thus dealing with an attempt to secure

the production of written statements and mental impressions contained in the files and the mind

of the attorney[.]"); *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 684 (S.D. Cal.

1996) (stating that documents that revealed the facts and evidence plaintiff's counsel found

important to prove plaintiff's claims and their assessment of the strength of that evidence would

constitute opinion work product); *Hausman v. Holland Am. Line-U.S.A.*, No. CV11-1308 BJR,

2015 WL 8327934, at *3 (W.D. Wash. Dec. 9, 2015) (holding that handwritten notes from

witness interview were opinion work product).

The cases Defendants cite in arguing that they seek only fact work product are not persuasive because they address requests for different evidence. *See Rapid Funding Grp., Inc. v. KeyBank Nat. Assoc.*, 2009 WL 10733689, at *6 (D. Or. Feb. 24, 2009) (treating transcript of witness interview as fact work product); *Cung Le v. Zuffa*, LLC, 321 F.R.D. 636, 652 (D. Nev. 2017) (ordering production of expert reports where it was undisputed that they were not created in anticipation of litigation). Although they characterize their requests as seeking mere facts, Defendants seek detailed information about Plaintiffs' litigation strategy. The standard for disclosure of opinion work product applies.[1] Defendants must show that mental impressions are at issue in the case and that their need for the work product is compelling. *See Holmgren*, 976 F.2d at 577. They meet neither requirement.

        i.        Mental Impressions "at issue"

Defendants argue that work product protection does not apply here because "the litigation activity itself is at issue in the litigation." Aldrich Letter 3. Defendants cite several cases in support of their argument. *Id.* (citing *Kockums Indus. v. Salem Equip.*, 561 F. Supp. 168, 172 (D. Or. 1983); *Handgards, Inc. v. Johnson & Johnson*, 413 F. Supp. 926, 931-33 (N.D. Cal. 1976); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992)). A review of these cases shows that they do not support Defendants' Motion.

In *Handgards*, the plaintiff alleged "that defendants instituted a series of patent infringement suits against it in bad faith as part of a conspiracy to restrain trade and monopolize the disposable plastic glove industry." 413 F. Supp. at 928. The defendants allegedly filed suit based on patents they knew or believed to be invalid. *Id.* Defendants sought to call three lawyers

---

[1] As noted below, the Court also concludes that Defendants have not shown a substantial need for the discovery they seek, so they have not met the standard for disclosure of fact work product either.

from the prior patent suits as witnesses, and the plaintiff, arguing that this waived attorney-client privilege, sought production of these lawyers' litigation files from the prior patent suits. *Id.* The district court concluded that because the good faith of defendants was "[t]he principal issue in the case" and the lawyers were being called as witnesses on that issue, "plaintiff has a particularized and compelling need for the production of the relevant work product of these attorneys." *Id.* at 931.

*Kockums*, like *Handgards*, involved a patent infringement suit. 561 F. Supp. at 170. During the litigation, the parties stipulated that one of the patents at issue was invalid and unenforceable. *Id.* The defendant then argued that the plaintiff brought suit based on a patent it knew was invalid, and the defendant's amended answer alleged counterclaims for antitrust violations and unfair competition. *Id.* at 170-71. The district court found that opinion work product was discoverable because the defendant could not prove its counterclaims without the discovery sought, and the defendant had made a prima facie showing that the plaintiff engaged in unfair competition or violated antitrust laws and sued upon an invalid patent. *Id.* at 173-74.

The third case Defendants rely on is a bad-faith insurance case. *Holmgren*, 976 F.2d at 575. The plaintiff sued defendant State Farm, alleging bad-faith settlement practices during its handling of her claim after she was injured in a car accident. *Id.* The district court ordered production of handwritten memos drafted by the defendant's adjuster during prior litigation. *Id.* at 576. The Ninth Circuit concluded that the district court had not erred because the mental impressions and strategy of the insurer's agents were at issue in the litigation and the plaintiff had a compelling need for the evidence to develop her bad faith claim. *Id.* at 577.

Plaintiffs' use of the disputed emails is not "at issue" within the meaning of *Handgards*, *Kockums*, and *Holmgren*. Those three cases involved claims for bad faith litigation, so the mental

impressions of the attorneys litigating the case were directly at issue.[2] The same is not true here.

Defendants point to allegations in their Amended Answer that Plaintiffs downloaded the emails

without Defendants' consent and "used them to prepare the complaint and pursue their baseless

claims against Defendants." Aldrich Letter 3 (quoting Am. Ans. ¶ 326, ECF 99) (emphasis

omitted). *See also* Aldrich Supp. Letter (Apr. 26, 2023) (citing Am. Ans. ¶¶ 326, 327). But

Defendants' SCA claim and their invasion of privacy claim both address the *access* of

documents, not the *use* of documents. *See* Op. & Ord. 13, ECF 164 ("The Stored

Communications Act, 18 U.S.C. § 2701 *et seq.*, governs access to stored electronic

communications."); *Reed v. Toyota Motor Credit Corp.*, 301 Or. App. 825, 831, 459 P.3d 253

(2020) ("To prevail at trial [in an intrusion upon seclusion tort claim], plaintiff must prove three

elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or

seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable

person."). Defendants do not need to know how Plaintiffs used the disputed documents in order

to prevail on their SCA claim or their invasion of privacy claim. And they do not suggest that

Plaintiffs' mental impressions are at issue in any of their other counterclaims. The inclusion of

factual allegations in Defendants' Amended Answer that need not be proved to prevail on any

counterclaim does not render Plaintiffs' mental impressions of the disputed emails "at issue"

under *Holmgren*.

---

[2] The two new authorities Defendants cite in their supplemental brief do not change the analysis. Defendants' citation to Moore's Federal Practice, Def. Supp. Br. 5, is inapposite because the activities of counsel are not at issue here. Defendants' reliance on *MGA Entm't, Inc. v. Mattel, Inc.*, 2012 WL 569389, at *13-*15 (C.D. Cal. Feb. 21, 2012) is unhelpful because the cited portion of the case addresses compulsory counterclaims. Defendants have identified no claims they made or could make for which counsel's mental impressions are at issue.

Aside from the above language in their Amended Answer, Defendants have not attempted to argue that Plaintiffs brought their claims in bad faith in the sense that term is used in *Handgards*, *Kockums*, and *Holmgren*. In all three cases, one party was alleged to have advanced a litigation position it knew was meritless. In *Handgards* and *Kockums*, the evidence showed that one party had brought suit based on a patent it knew to be invalid. 413 F. Supp. at 928; 561 F. Supp. at 171. And in *Holmgren*, there was evidence that the defendant insurer acted in bad faith when it made a low settlement offer despite recognizing a higher range of potential liability. 976 F.2d at 575-76. Defendants have provided no evidence that Plaintiffs knowingly brought meritless claims. Instead, Defendants argue that Plaintiffs were only able to bring their claims against Defendants because they used the disputed emails to build their case. Aldrich Supp. Letter. Even if Plaintiff Meyer used unlawful means to obtain evidence in support of his suit (if it turns out that his downloading of the emails violated the law), Defendants have not made a prima facie case that the claims themselves are baseless or brought in bad faith.

Plaintiffs distinguish *Handgards* and *Holmgren* on another basis: both involved successive litigation. Pl. Supp. Br. 2-3, 5. The Court finds this distinction relevant but less significant. In *Kockums*, the defendant made its counterclaims based on the plaintiff's alleged bad-faith conduct in the same litigation as the plaintiff's original claim. 561 F. Supp. at 170. But the defendant only justified discovery of opinion work product in support of its counterclaims after the parties stipulated that one of the patents on which the plaintiff had filed suit was invalid, void, and unenforceable. *Id.* The key question, therefore, is whether the conduct that forms the basis of the claim of bad faith litigation has been established.[3] Defendants have not made such a

---

[3] Plaintiffs point out that under Oregon law, a claim for wrongful use of a civil proceeding must be brought after the original proceeding is concluded. Pl. Supp. Br. 4 (citing Or. Rev. Stat. ("O.R.S.") § 31.230(c)). For that particular claim, the successive litigation distinction is critical.

showing here. The conduct they allege addresses how Plaintiffs gathered evidence to make their

claims, not the validity of the claims themselves. Counsel's mental impressions of the disputed

emails are not at issue in this litigation.

ii.      Compelling Need

Defendants have not shown a compelling need for the work product they seek. They

make several arguments. Defendants point out that Plaintiff Meyer's mental state is relevant to

the SCA claim and that his use of the documents to commence litigation is therefore relevant.

Aldrich Supp. Letter. Again, Plaintiff Meyer's mental state when *accessing* the emails is at issue.

His mental state when using the emails is only tangentially relevant. And Plaintiffs point out that

Defendants already have substantial information about what was accessed, when it was accessed,

and how it was accessed. Lang Letter 1. Defendants also know how some documents were used

because they were quoted or referred to in the Complaint. *See id.* Defendants do not have a

compelling need for Plaintiffs' counsel's litigation strategy to prove Plaintiff Meyer's mental

state for their SCA claim.[4] Nor do they have a compelling need for such evidence to prove

compensatory and/or punitive damages for their SCA and invasion of privacy claims. Defendants

have not shown that subsequent use of the disputed emails would be proper to consider in

awarding damages on those claims, as they cite only to their own briefing and pleadings for

support. Aldrich Supp. Letter. Assuming such evidence may be properly considered, Defendants

do not need precise details of how Plaintiffs used each document to make their case for damages.

---

The counterclaims in *Kockums* that justified production of opinion work product alleged antitrust
violations and unfair competition. 561 F. Supp. at 170. Different claims might support
production of opinion work product, but none of Defendants' counterclaims do.
[4] Indeed, the evidence Defendants submitted with their motion that Plaintiff Meyer was not
contemplating litigation until approximately two months after he accessed the emails further
diminishes the relevance of his use of the emails in proving the SCA claim.

Defendants also argue that the discovery sought is relevant to their claims for attorney

fees. Aldrich Supp. Letter. They argue that Plaintiffs' claims were brought by means of illegal

conduct (downloading the emails) and "[t]hat illegal conduct was the but-for cause of

Defendants' fees spent defending the wrongfully-filed suit." *Id.* They suggest that in such cases

"attorneys' fees spent defending the illegal lawsuit may be sought as compensatory damages

under a separate tort claim." *Id.* But Defendants do not make a separate tort claim for fees in

their Amended Answer. Plaintiffs convincingly argue that Defendants cannot do so in this

litigation. Pl. Supp. Br. 4-5. Oregon law requires that a claim for wrongful use of a civil

proceeding be brought after the original proceeding has concluded. O.R.S. 31.230(c). The

original proceeding must have resolved in favor of the party bringing the claim for wrongful use

of a civil proceeding. *Perry v. Rein*, 215 Or. App. 113, 125, 168 P.3d 1163 (2007) (citing *Alvarez*

*v. Retail Credit Ass'n,* 234 Or. 255, 259-60, 381 P.2d 499 (1963)). And this Court has previously

held that under federal law, there is no stand-alone claim for sham litigation. *Pac. Off.*

*Automation, Inc. v. Tracy*, No. 3:17-CV-01484-HZ, 2018 WL 5792814, at *2 (D. Or. Nov. 5,

2018). Despite being granted leave to file supplemental briefing, Defendants provided no new

authority showing they can bring a standalone claim for attorney fees here. The possibility of a

future tort claim is speculative and does not show a compelling need for opposing counsel's

opinion work product in this litigation.

Ultimately, Defendants have not shown that Plaintiffs' counsel's mental impressions of

the disputed emails are "at issue" in this case. And they have not shown a compelling need for

counsel's opinion work product. Defendants have not even shown a substantial need for the work

product. The Court now addresses whether the crime-fraud exception vitiates the attorney-client

privilege and work product protection.

### III.    Crime-Fraud Exception

Defendants also argue that the crime-fraud exception applies to the discovery sought. A

party asserting that the crime-fraud exception applies must meet a two-part test.

> First, the party must show that the client was engaged in or planning a criminal or
> fraudulent scheme when it sought the advice of counsel to further the scheme.
> Second, it must demonstrate that the attorney-client communications for which
> production is sought are sufficiently related to and were made *in furtherance
> of* [the] intended, or present, continuing illegality.

*In re Grand Jury Investigation*, 810 F.3d 1110, 1113 (9th Cir. 2016) (internal quotations omitted)

(emphasis in original). "[I]n a civil case, when the district court is asked to order outright

disclosure, the burden of proof on the party seeking to vitiate the [attorney-client] privilege is

preponderance of the evidence." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1082 (9th

Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100

(2009). The Ninth Circuit has held that the crime-fraud exception also applies to the work

product doctrine. *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015).

Defendants base their argument on a purported violation of Oregon's computer crime

statute. Aldrich Letter 4 (citing O.R.S. 164.377(4)). Defendants assert that although the statute

was not pleaded in the case, it may still be a valid basis for applying the crime-fraud exception.

Def. Supp. Br. 7-8 (citing *In re Berkley & Co., Inc.*, 629 F.2d 548, 554-55 (8th Cir. 1980);

*Rockwood Select Asset Fund XI, (6)-1, LLC v. Devine, Millimet & Branch*, 113 F. Supp. 3d 471,

479 (D.N.H. 2015)). After reviewing the cited authorities, the Court agrees with Defendants that

violation of the Oregon computer crime statute is a proper basis to argue that the crime-fraud

exception applies. However, the Court concludes that Defendants have not met either element of

the two-part test.

First, Defendants have not shown by a preponderance of the evidence that Plaintiffs were engaging in or planning a criminal or fraudulent scheme when they sought the advice of counsel to further the scheme. Defendants have not convinced the Court that Plaintiffs violated the Oregon computer crime statute. Under the statute, "[a]ny person who knowingly and without authorization uses, accesses or attempts to access any computer, computer system, computer network, or any computer software, program, documentation or data contained in such computer, computer system or computer network, commits computer crime." O.R.S. 164.377(4). Defendants argue only the use element, not access. Def. Supp. Br. 9.

The "without authorization" element is key here. The Oregon Supreme Court interpreted "without authorization" in O.R.S. 164.377 to mean accessing or using the computer with "no authority whatsoever to use the computer." *State v. Nascimento*, 360 Or. 28, 43, 379 P.3d 484 (2016). One does not violate the statute by accessing or using a computer with authority but with an improper purpose. *Id.* at 44. For instance, in *Nascimento*, the defendant did not violate the statute where she used a lottery terminal she had permission to use but used it for the improper purpose of printing Keno tickets for herself in violation of her employer's policy. *Id.* at 45. This lines up closely with how the federal courts have interpreted the authorization element in the SCA. Op. & Ord. 15-16, ECF 164.

Although Defendants assert that Plaintiff Meyer had no authorization to use the disputed emails, Def. Supp. Br. 9, the Court finds this issue unresolved. In denying Defendants' Motion for Partial Summary Judgment on their SCA counterclaim, the Court identified several bases under which Plaintiff Meyer may have been authorized to access the disputed emails. Op. & Ord. 30-45. While some of these bases apply only in the context of the SCA, or claims involving access rather than use, at least one of them is relevant here. The Court held that Defendant Meyer

may have been authorized to access Defendants' emails because he was a partner of Plaintiff Argil DX, the putative partnership. *Id.* at 37-39. If Plaintiff Meyer had the right to access the emails, he may also have had the right to use (read) the emails as a partner of Argil DX. Defendants have not shown by a preponderance of the evidence that Plaintiff Meyer had no such right.

Second, Defendants have not shown that the work product sought was created in furtherance of a crime or fraud. Plaintiffs argue that if the work product doctrine does not apply until March 19, 2021, any crime had already happened because Plaintiff Meyer had already downloaded the emails and begun reviewing them. Pl. Supp. Br. 7. This is true for access, but it is less clear that it is true for use. Plaintiff Meyer continued to review at least some emails after March 19, 2021, because documents obtained from the disputed emails were quoted or referenced in the Complaint. *See* Op. & Ord., ECF 163 (document for which Defendants claimed privilege, which was obtained through the email downloads, was quoted in the Complaint). Thus, documents addressing how to use the disputed emails in this litigation may have been created in furtherance of Plaintiffs' unlawful use of the documents. However, Defendants have not convinced the Court that this factual scenario would indeed violate O.R.S. 164.377. As Plaintiffs point out, Defendants cited no caselaw interpreting the statute. Pl. Supp. Br. 7. Defendants argue that Plaintiffs have failed to explain why they did not violate the statute. Def. Supp. Br. 9. But it is Defendants who bear the burden to establish by a preponderance of the evidence that Plaintiff Meyer violated the statute, and this they have not done. The crime-fraud exception does not apply.

IV.     **Attorney Fees**

Plaintiffs seek attorney fees if the Court denies Defendants' Motion to Compel. Pl. Supp. Br. 9. The Court is largely denying Defendants' Motion, granting it only with respect to some material for the specified period between January and March 2021. If a motion to compel is granted in part and denied in part, the Court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). At this time, the Court declines to consider whether to apportion the expenses incurred in briefing this motion. Plaintiffs may renew their request for expenses after trial.

CONCLUSION

Defendants' Motion to Compel [172] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.


DATED:_____July 5, 2023_____.



_____
MARCO A. HERNÁNDEZ
United States District Judge