IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON MEYER, an individual;
ARGIL DX LLC f/k/a ZAP
TECHNOLOGY SOLUTIONS LLC, a
Nevada limited liability company; and
ARGIL DX, putative partnership,

              Plaintiffs,

     v.

ANKUR MITTAL, an individual; AXENO
CONSULTING PVT. LTD. f/k/a
ARGILDX CONSULTING PVT. LTD.
f/k/a ACCUNITY SOFTWARE PVT.
LTD., an Indian private company; and
ADX CONSULTING INC., a Texas
corporation,

              Defendants.

No. 3:21-cv-00621-HZ

OPINION & ORDER

Adam D. Rose
Eric C. Lang
Rose Law Firm, P.C.
5200 Meadows Rd, Ste 150
Lake Oswego, OR 97035

David S. Aman
Aman Law LLC

14705 SW Millikan Way
Beaverton, OR 97003

      Attorneys for Plaintiffs

Sara Cotton
Nika Aldrich
Mario Delegato
Schwabe, Williamson & Wyatt, P.C.
1211 SW 5th Ave, Ste 1900
Portland, OR 97204

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

Following the jury's verdict, the parties have filed supplemental briefing on Defendants' counterclaim for violation of the Stored Communications Act ("SCA"). Because the jury was not asked to decide the amount of compensatory damages, the Court must do so. For the following reasons, the Court concludes that Defendants are entitled to $1,000 in compensatory damages.

## BACKGROUND

Plaintiffs sued Defendants on April 23, 2021, in this business dispute. Defendants brought several counterclaims, including one alleging that Plaintiffs Meyer and Argil DX LLC violated the SCA when Plaintiff Meyer downloaded emails and other documents Defendant Mittal kept on a shared server. Defendants sought statutory damages and punitive damages on this claim; they did not seek actual damages.

The case proceeded to a jury trial beginning June 24, 2024. The jury returned a verdict in favor of Defendants. ECF 277. The Court submitted the SCA claim to the jury despite the parties' uncertainty over whether Defendants had a right to a jury trial on that claim, concluding that if they did not, the verdict could serve as an advisory verdict under Federal Rule of Civil Procedure 39(c).

The jury found that Plaintiffs Meyer and Argil DX LLC had violated the SCA. Verdict 4. The jury found 665 violations. *Id.* The jury also awarded Defendants $182,875 in punitive damages. *Id.* at 6. Defendants did not seek a jury verdict on the amount of actual damages. The Court instructed the parties to submit post-trial briefing on the issue of statutory damages. Tr. 1168-70, ECF 300. Plaintiffs also expressed doubt about whether the jury's verdict on the SCA claim was binding, and the Court permitted them to address that issue. *Id.*[1]

## DISCUSSION

The Court first concludes that the jury's verdict is binding and not advisory. The Court then determines the amount of actual damages to which Defendants are entitled.

## I.    Right to Jury Trial on SCA Claim

The parties dispute the effect of the jury's verdict. Plaintiffs appear to treat the verdict as advisory, at least with respect to the number of violations of the SCA. Pl. Br. 12-14, ECF 289. Defendants argue that the jury's verdict is binding. Def. Br. 15-17, ECF 303. When a party demands a jury trial, the trial on all issues in the case must be by jury unless "(1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a). "Issues on which a jury trial is not properly demanded are to be tried by the court." Fed. R. Civ. P. 39(b). If an action is not triable of right by a jury, the court "(1) may try any issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right." Fed. R. Civ. P. 39(c).

---

[1] In addition to the court-ordered briefs, Plaintiffs submitted a reply in support of their position, ECF 306, and Defendants submitted a sur-reply, ECF 309. The Court considered these filings in resolving the issues presented.

The Seventh Amendment provides the right to a jury trial "[i]n suits at common law." U.S. Const. Am. VII. The Supreme Court has instructed that before addressing the constitutional question, courts should first determine whether the statute grants the right to a jury trial. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998).

    A.    Statutory Right

The Court concludes that the SCA does not provide a statutory right to a jury trial in a civil case. The SCA, 18 U.S.C. § 2701 *et seq.*, criminalizes unauthorized access of stored electronic or wire communications. The statute also provides for a civil action. *Id.* § 2707. In terms of damages, it states:

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

*Id.* § 2707(c).

Nowhere does § 2707 mention juries. It only refers to "the court." Similarly, the Supreme Court found that § 504(c) of the Copyright Act did not provide a right to a jury trial for statutory damages where it stated that such damages "are to be assessed in an amount that 'the court considers just.'" *Feltner*, 523 U.S. at 345 (quoting 17 U.S.C. § 504(c)(1)). Like the SCA, the Copyright Act did not refer to jury trials or juries at all. *Id.* at 346. The Supreme Court concluded that "court" referred to the judge, not a jury. *Id.* It distinguished a case in which claims under the Age Discrimination in Employment Act ("ADEA") were found to provide a right to a jury trial despite references to "the court" and not a jury, because ADEA referred to "legal" relief and was to be enforced consistent with the Fair Labor Standards Act, which does provide the right to a

jury trial. *Id.* at 347. Neither of those considerations applies here. The Court concludes that the SCA does not provide the right to a jury trial and therefore turns to the constitutional question.

B.       Constitutional Right

As stated, the Seventh Amendment provides the right to a jury trial "[i]n suits at common law." U.S. Const. Am. VII. The Supreme Court has explained that "suits at common law" refers not only to suits that were historically recognized at common law, but also to "'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.'" *Feltner*, 523 U.S. at 348 (quoting *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L. Ed. 732 (1830) (emphasis in original)). Accordingly, the Seventh Amendment applies to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Id.* (internal quotations omitted). To determine whether a statutory cause of action is analogous to cases tried in the courts of law rather than the courts of equity, courts "examine both the nature of the statutory action and the remedy sought." *Id.*

In *Feltner*, the Supreme Court concluded that the Seventh Amendment provided a right to a jury trial on statutory damages under § 504(c) of the Copyright Act because copyright suits for monetary damages were historically tried before juries in courts of law. *Id.* at 349. The right to a jury trial included "the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *Id.* at 353 (emphasis in original).

The Court must first determine the closest analogue at common law for an SCA claim. The Ninth Circuit has analogized the SCA to the common law of trespass. *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004). The tort of invasion of privacy (specifically,

intrusion upon seclusion) is another close analogue—indeed, Defendants also brought, and prevailed on, such a claim in this case. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023) (analogizing the receipt of unsolicited phone calls to invasion of privacy, intrusion upon seclusion, and nuisance). Both trespass and invasion of privacy are common-law torts that provide for legal relief in the form of monetary damages—the type of relief Defendants seek in their SCA claim. The Supreme Court has found that a regulatory takings claim brought under 42 U.S.C. § 1983 is a legal claim roughly analogous to common-law torts such as trespass, and that a plaintiff bringing such a claim is entitled to a jury trial. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 715-16, 718-21 (1999).

The Court concludes that Defendants had a Seventh Amendment right to a jury trial on their SCA claim. The claim is analogous to claims for trespass or invasion of privacy, which are legal claims, and Defendants sought legal relief in the form of money damages. It was proper for the jury to decide the question of liability, the number of violations of the SCA, and the amount of punitive damages. The Court cannot disturb the jury's verdict on those issues.

Defendants were also entitled to ask the jury to decide the award of compensatory damages. But as Plaintiffs state, "Defendants did not even ask the jury to find actual damages or ask this Court to instruct as to actual damages." Pl. Br. 11. They instead chose to ask the jury to determine the number of violations based on their theory that a separate category of statutory damages existed, with the expectation that the Court would then award statutory damages based on the jury's finding. This was a deliberate strategic choice, made knowingly and voluntarily. By choosing not to ask the jury to quantify the amount of compensatory damages, Defendants waived their right to a jury trial on that issue. *See Palmer v. Valdez*, 560 F.3d 965, 969 (9th Cir.

2009) ("An individual may waive his or her right to a civil jury trial and we have held that knowing participation in a bench trial without objection may be sufficient to constitute a jury waiver."). Thus, the Court must decide the award of compensatory damages. In so doing, the Court must abide by the jury's verdict.

## II.    Availability of Actual or Statutory Damages

The SCA provides:

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

18 U.S.C. § 2707(c).

Defendants argue that they are entitled to recover $1,000 per violation and need not show any actual damages. Def. Br. 8-9. Plaintiffs assert that Defendants must prove actual damages to recover anything other than punitive damages and attorney fees, and that if Defendants are entitled to recover, the amount need not and should not be $1,000 per violation of the SCA. Pl. Br. 2-3.

A.    Legal Standard for Statutory Construction

To interpret a statute and discern its meaning, courts must "'exhaust all the "traditional tools" of construction'" before concluding that the statute is ambiguous. *Larson v. Saul*, 967 F.3d 914, 922 (9th Cir. 2020) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). Courts "evaluate the plain text of the statute, its object and policy, the law's surrounding provisions, and the legislative history of its enactment." *Id.* "Courts must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders

other provisions of the same statute inconsistent, meaningless or superfluous." *Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1051 (9th Cir. 2015) (internal quotations omitted). "Additionally, particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *Id.* (internal quotations omitted).

B.    Waiver Issue

Defendants argue that Plaintiffs have waived the argument that actual damages must be proved in order to recover statutory damages. Def. Br. 17-18. They state that since May 1, 2023, Plaintiffs have been aware that Defendants were seeking statutory damages for each day a download occurred. *Id.* at 17. They point out that Plaintiffs' contentions in the Pretrial Order did not argue that actual damages must be proved to recover statutory damages. *Id.* at 18.

The Court rejects Defendants' argument. Defendants chose not to submit the question of actual damages to the jury and to rely on their interpretation of the SCA. They chose to ask the jury to decide only the number of violations, which they argued would mandate an award of $1,000 per violation. Thus, they chose a litigation strategy that would necessarily require the Court to interpret the SCA in order to award damages if the jury found Plaintiffs liable. Even if Plaintiffs had not raised the issue, the Court would be required to decide it in order to determine how to award damages.

Defendants rely on *Ivie v. AstraZeneca Pharms. LP*, 2021 WL 5167283, at *3 (D. Or. Nov. 5, 2021), in which the plaintiff failed to present evidence of a sufficient connection to Oregon in its Oregon whistleblower claim. Def. Br. 18. The Ninth Circuit held that the district court improperly granted the defendant's motion for judgment as a matter of law based on its finding that an Oregon connection was required and the lack of proof on that point, because the argument was not raised in the pretrial order. *Ivie v. AstraZeneca Pharms. LP*, No. 21-35978,

2023 WL 3563007, at *1 (9th Cir. May 19, 2023), *cert. denied*, 144 S. Ct. 495 (2023). As

Defendants point out, the relevant statute in *Ivie* was silent on such a requirement. Def. Br. 18.

Further, in *Ivie*, the district court vacated the jury's verdict based on the defendant's argument.

Here, in contrast, the Court must interpret requirements that appear on the face of the SCA. And

Defendants chose not to ask the jury to decide actual damages, or to present evidence quantifying

actual damages, and instead to seek statutory damages awarded by the Court. In so doing, they

necessarily ask the Court to interpret the SCA. The Court therefore considers Plaintiffs'

argument that actual damages are required.

C.    Requirement to Prove Actual Damages

Plaintiffs argue that Defendants must prove actual damages or a violator's profits in order

to recover anything other than punitive damages and attorney fees. Pl. Br. 5. They point out that

all four circuits to address the question have come to that conclusion. *Id.* at 5-6 (citing *Van

Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199 (4th Cir. 2009); *Vista Mktg., LLC v. Burkett*, 812

F.3d 954 (11th Cir. 2016); *Hovanec v. Miller*, 831 F. App'x 683 (5th Cir. 2020); *Domain

Protection LLC v. Sea Wasp LLC*, 23 F.4th 529 (5th Cir. 2022); *Seale v. Peacock*, 32 F.4th 1011

(10th Cir. 2022)). Defendants respond that many district courts, including many in the Ninth

Circuit, have rejected the reasoning underlying the cases Plaintiffs cite. Def. Br. 20 (collecting

cases). The Court concludes that Plaintiffs' interpretation is correct.

i.    Interpretation of SCA

The Court agrees with the cases Plaintiffs cite that the SCA requires proof of actual

damages. While the Supreme Court has not interpreted the relevant language of the SCA, it has

interpreted very similar language in the Privacy Act. *Doe v. Chao*, 540 U.S. 614 (2004). The

Privacy Act provides in relevant part:

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
>> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>>
>> (B) the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552a(g)(4). The Supreme Court held that this provision required a plaintiff to prove actual damages in order to trigger the minimum recovery of $1,000. *Doe*, 540 U.S. at 616.

The Supreme Court stated that "a straightforward textual analysis" supported requiring proof of actual damages. *Id.* at 620. It explained: "When the statute gets to the point of guaranteeing the $1,000 minimum, it not only has confined any eligibility to victims of adverse effects caused by intentional or willful actions, but has provided expressly for liability to such victims for 'actual damages sustained.'" *Id.* "When the very next clause of the sentence containing the explicit provision guarantees $1,000 to a 'person entitled to recovery,' the simplest reading of that phrase looks back to the immediately preceding provision for recovering actual damages, which is also the Act's sole provision for recovering anything (as distinct from equitable relief)." *Id.* Reading the statute differently would leave the language about entitlement to recovery "with no job to do." *Id.* at 623.

The *Doe* Court rejected the plaintiff's arguments that it would be illogical to create a cause of action but deny recovery without a showing of actual damages and that it was "peculiar" to offer guaranteed damages only to plaintiffs who could demonstrate actual damages. *Id.* at 624-25. The Supreme Court also rebuffed the plaintiff's attempts to analogize the Privacy Act to the Tax Reform Act and the SCA. *Id.* at 626. It found one provision of the Tax Reform Act too different because it did not include the phrase "entitled to recovery." *Id.* And it rejected

consideration of both statutes' legislative histories because they were "completely separate statutes passed well after the Privacy Act." *Id.*

The Fourth and Eleventh Circuits relied heavily on the Supreme Court's reasoning in *Doe*. *Van Alstyne*, 560 F.3d at 205-06; *Vista Marketing*, 812 F.3d at 965-67. They noted that both the SCA and the Privacy Act contain a similar phrase about "a person entitled to recover[y]," which the Supreme Court found critical in *Doe*, and the language of the relevant provisions is otherwise similar. 560 F.3d at 205; 812 F.3d at 965. As the Eleventh Circuit pointed out, right after discussing the $1,000 recovery, the SCA separately provides for punitive damages if the violation is willful or intentional, which suggests that the "person entitled to recover" refers only to those who have proved actual damages or the violator's profits. 812 F.3d at 965-66. And here, as in the Privacy Act, the "entitled to recover" language would be superfluous if no proof of actual damages were required. *Id.* at 966. The placement of "entitled to recover" after discussion of actual damages or the violator's profits indicates that it is proof of actual damages or the violator's profits that entitles one to recover. *Id.*

In contrast, the SCA provides that costs and attorney fees can be recovered "[i]n the case of a successful action to enforce liability." 18 U.S.C. § 2707(c). The use of the word "liability" indicates that no award of damages is required to recover costs and fees. Had Congress intended to allow recovery of $1,000 absent proof of actual damages, it would have specified that a showing of liability alone was sufficient. 812 F.3d at 967. The Court agrees with *Van Alstyne* and *Vista Marketing* that the statutory text of § 2707(c) requires proof of actual damages or the violator's profits from the violation in order to trigger the $1,000 minimum recovery.

Relatedly, the Court concludes that the SCA does not provide for a separate category of "statutory damages." The $1,000 award is a statutory minimum of compensatory damages,

which include actual damages and the violator's profits. That is apparent from the text and structure of the damages provision as discussed. As the Eleventh Circuit pointed out, Congress amended the Wiretap Act through the same legislation that enacted the SCA, and it took a different approach there. *Vista Marketing*, 812 F.3d at 967. As amended in 1986, the damages provision of the Wiretap Act provided in relevant part:

> (c) Computation of Damages.—The court may assess as damages in an action under this section whichever is the greater of—
> > (1) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or
> > (2) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520(c) (1986).

The Wiretap Act, unlike the SCA, clearly distinguished between actual damages and statutory damages; the SCA does not even use the term "statutory damages." The Court agrees with the Eleventh Circuit that these differences are relevant because the two statutes were amended at the same time through the same legislation, with Congress extensively revising the damages provision of the Wiretap Act in the process. 812 F.3d at 968. The differences between the damages provisions of the SCA and the Wiretap Act cement the conclusion that there is no separate category of "statutory damages" under the SCA.

Arguments that no showing of actual damages is required to trigger the $1,000 recovery under the SCA often center on the legislative history and point to the *Doe* Court's refusal to analogize the Privacy Act to the SCA. *E.g.*, *Cedar Hill Assocs., Inc. v. Paget*, No. 04 C 0557, 2005 WL 3430562, at *3 (N.D. Ill. Dec. 9, 2005); *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2014 WL 812401, at *6-*7 (N.D. Ill. Mar. 3, 2014); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1045 (N.D. Cal. 2018). The Tenth and Eleventh Circuits have explained why those arguments are unpersuasive. As the Eleventh Circuit stated, "while *Doe* did decline to

consider the legislative history of the SCA in construing the meaning of the Privacy Act, it did so because the SCA was a separate statute 'passed well after the Privacy Act.'" 812 F.3d at 972 (quoting *Doe*, 540 U.S. at 626). *Doe* did not interpret the SCA.[2] The Court agrees with the Eleventh Circuit that the difference in legislative history "does nothing to undermine the similarity of the language employed in both damages provisions and the Supreme Court's textual analysis of that language." *Id.* at 973.

The SCA's legislative history is not as decisive as some courts have suggested. The Senate Report included the following language: "§ 2707(c) provides for 'damages ... including the sum of actual damages suffered by the plaintiff and any profits made by the violator as the result of the violation as provided in (c) with minimum statutory damages of $1,000.'" *Vista Marketing*, 812 F.3d at 973 (quoting S. Rep. No. 99-541, at 43, 1986 U.S.C.C.A.N. 3555, 3597). The Court does not read this excerpt from the Senate Report to unambiguously provide for damages of $1,000 in the absence of actual damages. And as the Eleventh Circuit explained, the Senate Report construed the Senate version of § 2707(c), which was not enacted. *Id.* The Senate version did not provide for punitive damages, while the enacted version does. *Id.* The Court agrees with the Eleventh Circuit that this difference is relevant, because the availability of punitive damages with no need to show actual damages serves the deterrent effect that statutory damages absent any showing of actual damages would have. *Id.*

The House Report stated, "'[d]amages include actual damages, any lost profits but in no case less than $1,000.'" *Id.* at 974 (citing *Shefts v. Petrakis*, 931 F. Supp. 2d 916, 918 (C.D. Ill.

---

[2] Some cases cite Justice Ginsburg's dissent in *Doe*, which stated that § 2707(c) "ha[s] been understood to permit recovery of the $1,000 statutory minimum despite the absence of proven actual damages." *Doe*, 540 U.S. at 640 (Ginsburg, J., dissenting). A dissent is not binding. Further, the *Doe* dissent relied on the same statements from the legislative history that this Court has found unpersuasive.

2013) (citing H.R. Rep. No. 99-647, at 74 (1986))). The Court agrees with the Eleventh Circuit that this language is far from decisive. *Id.* As the Tenth Circuit stated, "[b]oth reports could be read as suggesting a plaintiff must have actual damages, but if those damages are less than $1,000, the statute provides for an award of $1,000." *Seale v. Peacock*, 32 F.4th 1011, 1026 (10th Cir. 2022). In sum, neither *Doe* nor the legislative history undermines this Court's interpretation of the SCA's damages provision.

In addition to district court cases, Defendants point to *Wyatt Technology Corp. v. Smithson*, 345 F. App'x 236, 239 (9th Cir. 2009). Def. Br. 20. In *Wyatt Technology*, the Ninth Circuit vacated a damages award under the SCA because it did not include compensatory damages, stating that such damages were required under the SCA. 345 F. App'x at 239. This unpublished memorandum opinion is not binding on this Court. *See* Ninth Circuit Rule 36-3 ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion."). The parties in *Wyatt Technology* do not appear to have fully litigated the interpretation of the SCA's damages provision, and the opinion does not discuss the facts of the case enough to provide guidance on that issue here. The Court agrees with the thorough analysis of the Fourth, Tenth, and Eleventh Circuits, and concludes that proof of actual damages is required to trigger recovery of the statutory minimum of $1,000 in compensatory damages.

                    ii.    Existence of Actual Damages

The Court finds that Defendants did show that they suffered actual damages. Defendant Mittal testified that because he became concerned that Plaintiff Meyer was accessing Defendant Axeno's emails, he acquired a new server and moved the company's emails and documents off the parties' shared server and onto the new server. *See* Def. Br. 22. Plaintiffs argue that

Defendants did not quantify the amount of damages. Pl. Br. 11. That is true, but it is relevant to considering how much Defendants are entitled to recover, not whether they are entitled to recover.

Defendants argue that they also sustained damages from investigating Plaintiffs' conduct. Def. Br. 22-23. They state that they would have submitted proof of actual damages at trial if Plaintiffs had timely made their argument that proof of actual damages was required. *Id.* Defendants state that they would have submitted evidence that they retained Mr. Sahni, an attorney in India, to help them resolve the issue of the email downloads. *Id.* at 23. They note that the jury did hear that Defendants retained Mr. Sahni. *Id.* This is further evidence that Defendants suffered actual damages from the SCA violations.

D.    Amount of Damages Award

Defendants argue that they are entitled to $1,000 per violation. Def. Br. 10-11. Plaintiffs argue that the SCA does not mandate an award for $1,000 per violation. Pl. Br. 3. Plaintiffs are correct. The Court therefore considers what amount of compensatory damages Defendants are entitled to recover and concludes that Defendants have not shown that they are entitled to recover more than $1,000 in actual damages.

i.    Interpretation of SCA

Again, the relevant text of the statute reads:

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation is willful or intentional, the court may assess punitive damages. In the case of a successful action to enforce liability under this section, the court may assess the costs of the action, together with reasonable attorney fees determined by the court.

18 U.S.C. § 2707(c).

Plaintiffs point out that the terms "statutory damages" and "per violation" appear nowhere in the statutory text. Pl. Br. 3. They contrast this statute with other federal statutes that expressly provide for damages per violation. *Id.* at 3-4 (citing *Prewett ex rel. J.W. v. Weems*, 749 F.3d 454, 460-61 (6th Cir. 2014) (collecting cases)). And they point to examples of statutes in which Congress mandated statutory damages. *Id.* at 5.

The plain language of the SCA does not mandate an award of $1,000 per violation. It states only, "in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c). The award of $1,000 is tied to an entitlement to recover, not to the number of violations. The only reasonable way to read the statute is that in cases where the sum of the actual damages and the violator's profits is greater than zero, the SCA plaintiff is entitled to recover at least $1,000. The $1,000 is a floor for the plaintiff's recovery of damages in the category of actual damages and violator's profits, not a separate category of damages. *Accord Vista Mktg.*, 812 F.3d at 971 ("Section 2707(c) does not provide for a statutory award of $1,000 per violation, even when a plaintiff proves actual damages or a violator's profits. Rather, it establishes a floor award of $1,000—regardless of the number of violations—when a plaintiff shows actual damages or a violator's profits."). The legislative history discussed above does not suggest otherwise.

The Court's reading of the $1,000 provision also makes sense in the context of the other relief available. The statute provides for punitive damages in cases where the violation is willful or intentional without any required showing of actual damages. *Van Alstyne*, 560 F.3d at 209. Plaintiffs do not dispute that Defendants were entitled to seek punitive damages. This accounts for situations in which a violator's conduct is egregious but actual damages are minimal or nonexistent. Punitive damages are intended to serve a deterrent effect. *Morgan v. Woessner*, 997

F.2d 1244, 1256 (9th Cir. 1993). Similarly, attorney fees and costs may be recovered on a successful showing of liability alone, so plaintiffs who do not recover any damages can still recoup the cost of vindicating their rights, which incentivizes bringing a claim even if the likelihood of recovering damages is low.

Congress could have specified that an award of $1,000 per violation was available had it wished to do so. It has specified per-violation awards many times. The Wiretap Act gives courts the option to assess "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2)(B). As noted above, that provision was enacted at the same time as the SCA through the same legislation; that Congress used different language indicates it intended different results. Similarly, the Audio Home Recording Act ("AHRA") provides: "A complaining party may recover an award of statutory damages for each violation of section 1002(a) or (c) in the sum of not more than $2,500 per device involved in such violation or per device on which a service prohibited by section 1002(c) has been performed, as the court considers just." 17 U.S.C. § 1009(d)(1)(B)(i). While the AHRA focuses on the number of devices, the SCA's damages provision focuses on the total award of damages, not a per-violation award. The Court will not read a per-violation award requirement into the SCA.

Arguments that the SCA should be interpreted to provide for a per-violation award of $1,000 are not convincing. For example, in *In re Hawaiian Airlines, Inc.*, the district court stated that "the $1,000 statutory damage figure seems to refer to each unauthorized intrusion in violation of the Act." 355 B.R. 225, 230 (D. Haw. 2006). The district court found "that the statutory language is somewhat ambiguous and the provision could be read to limit recovery of statutory damages to $1,000 total, regardless of the number of violations." *Id.* It ultimately rejected the latter interpretation and concluded that "based on the language of the Act and the

need for the damage provision to provide deterrence for would-be violators, multiple violations of the Stored Communications Act may warrant multiplying the $1,000 minimum statutory award." *Id.* at 232. Defendants rely heavily on *Hawaiian Airlines*. Def. Br. 10-11.

As this Court has explained, the SCA is not ambiguous. It does not provide for $1,000 per unauthorized intrusion or cap recovery at $1,000 per violation: it provides that if some amount of actual damages or violator's profits is proved, the plaintiff's recovery in that category of damages must be at least $1,000. The SCA does not have a separate category of statutory damages. As for the deterrence rationale, the SCA provides for punitive damages in the case of intentional or willful violations, and for attorney fees and costs if liability is proved. The minimum award of $1,000 is tied to compensatory damages, which serve to compensate the plaintiff for harm, not deter wrongdoing. It would be inappropriate to multiply them to serve a purpose other than compensation for harm when Congress has not indicated that doing so is appropriate.

             ii.    Award of Damages

The Court concludes that an award of $1,000 in actual damages is appropriate here. Defendants did not prove that Plaintiffs profited from the SCA violations. Defendants did prove actual damages based on the expense and inconvenience of acquiring a new server and moving their stored documents to the new server, as well as hiring Mr. Sahni to investigate. But they provided no evidence of the value of those damages. They chose instead to rely on their theory that they were entitled to $1,000 per violation and that the Court would multiply the number of violations the jury found by $1,000. Defendants' position that they are entitled to $1,000 per violation of the SCA is inconsistent with the statutory text and would constitute a windfall unsupported by the evidence they presented in support of their claim. In the absence of any

quantification of damages, the Court concludes that the statutory minimum of $1,000 should be awarded.

An award of $1,000 is consistent with the jury's verdict. While the jury found 665 violations, it made no findings about the nature of the harm from those violations and did not quantify the harm. The jury awarded punitive damages at an amount it deemed appropriate. Punitive damages serve to punish the wrongdoer and deter future wrongdoing. In awarding actual damages, the Court focused on what damages were proved, not the number of violations, because the number of violations does not in itself say anything about actual damages. As Plaintiffs point out, the changed server is a single harm. Pl. Br. 11. The Court has no information to determine the value of Defendants' damages from the changed server or Mr. Sahni's investigation. Defendants chose not to present that evidence at trial and instead to rely on their interpretation of the SCA. They must live with the results of that strategic choice. The Court awards Defendants the statutory minimum of $1,000 in actual damages on their SCA claim.

## CONCLUSION

The Court awards Defendants $1,000 in actual damages on their claim for violation of the Stored Communications Act. The parties are to confer and submit a proposed judgment within 30 days.

IT IS SO ORDERED.


DATED: ___August 29, 2024___.



_____
MARCO A. HERNÁNDEZ
United States District Judge