IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JASON MEYER, an individual; ARGIL DX LLC f/k/a ZAP TECHNOLOGY SOLUTIONS LLC, a Nevada limited liability company; and ARGIL DX, putative partnership,<br><br>              Plaintiffs,<br><br>    v.<br><br>ANKUR MITTAL, an individual; AXENO CONSULTING PVT. LTD. f/k/a ARGILDX CONSULTING PVT. LTD. f/k/a ACCUNITY SOFTWARE PVT. LTD., an Indian private company; and ADX CONSULTING INC., a Texas corporation,<br><br>             Defendants. | No. 3:21-cv-00621-HZ<br><br>OPINION & ORDER |

Adam D. Rose
Eric C. Lang
Rose Law Firm, P.C.
5200 Meadows Rd, Ste 150
Lake Oswego, OR 97035

David S. Aman
Aman Law LLC
14705 S.W. Millikan Way
Beaverton, OR 97003

      Attorneys for Plaintiffs

1 – OPINION & ORDER

Sara Cotton
Mario Delegato
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204

Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt P.C.
1420 Fifth Avenue
Suite 3400
Seattle, WA 98101

      Attorneys for Defendants

HERNÁNDEZ, Senior Judge:

The matter is before the Court on Plaintiffs' Combined and Alternative Motions Under Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law or in the Alternative under Federal Rule of Civil Procedure 59 for a New Trial, ECF 325. For the reasons that follow, the Court denies Plaintiffs' Motion.

## BACKGROUND

The parties are familiar with the background of this matter. Accordingly, the Court recites only facts relevant to the pending Motion.

This case concerns a business relationship between Plaintiffs Jason Meyer, Argil DX LLC (aka Zap Technology), and Argil DX and Defendants Ankur Mittal, Axeno Consulting PVT LTD (fka Argildx Consulting PVT LTD, Accunity Software PVT LTD), and ADX Consulting Inc.

After various rulings by the Court on the parties' motions for summary judgment this matter went to trial before a jury on June 24, 2024. On July 1, 2024, the jury returned a Verdict in which it found in relevant part that Plaintiffs did not prove that Argil DX LLC and Axeno Consulting formed a partnership, that Axeno Consulting intentionally interfered with the contract

2 – OPINION & ORDER

between Argil DX LLC and Ernst & Young ("EY"), or that Axeno Consulting breached a fiduciary duty to Argil DX LLC with respect to the EY contract; Mittal proved his invasion of privacy counterclaim against Meyer and Argil DX LLC and Mittal and Axeno Consulting proved their counterclaim for violation of the Stored Communications Act ("SCA").

On October 28, 2024, Plaintiffs filed their Combined and Alternative Motions Under Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law or in the Alternative under Federal Rule of Civil Procedure 59 for a New Trial. The Court took the Motion under advisement on November 15, 2024.

## STANDARDS

### I.  Rule 50(b)

"A Rule 50(b) motion for judgment as a matter of law should be granted when 'the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Andrews v. Brennan*, No. 22-35081, 2023 WL 4637114, at *1 (9th Cir. July 20, 2023)(quoting *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)). The court may grant a Rule 50 motion for judgment as a matter of law only when "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Krechman v. County of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013) (internal citations omitted). "A jury's verdict must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion from the same evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). "[I]n entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence." *Go Daddy Software, Inc.*, 581 F.3d at 961 (quotation omitted). Rather, "[t]he evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Id.*

## II.   Rule 59

Under Rule 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "A new trial should be granted . . . 'if the jury's verdict was against the clear weight of the evidence,'" *Bell v. Williams*, 108 F.4th 809, 819 (9th Cir. 2024)(quoting *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735, 742 (9th Cir. 2003)), "or is based upon evidence which is false, or that a new trial is necessary to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1152 (9th Cir. 2024) (quotation omitted). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1151 (9th Cir. 2020)(quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

## DISCUSSION

## I.   Exhibits 333-340

Plaintiffs assert the Court erred when it did not permit Plaintiffs to admit exhibits 333 through 340: Microsoft Online Subscription Agreement; Microsoft subscription renewal emails; Microsoft "admin roles"; Microsoft Privacy Statement; Microsoft Privacy Statement Data Collected; Microsoft Privacy Statement History of Changes; Microsoft Service Agreement dated October 1, 2020; and Microsoft Service Agreement dated August 15, 2022. Plaintiffs assert these exhibits document Plaintiffs' rights to the data on the server, which is relevant to the question of Meyer's authority to read Defendants' emails without consent. Plaintiffs contend these

documents are relevant to whether the parties were in a partnership or simply a collaboration because "Plaintiffs contended throughout this case that the whole interface between the parties is relevant to determining the duties they owed to each other." Pl. Mot., ECF 325, at 7. Plaintiffs also assert the issue of authority is relevant to Defendants' counterclaim for violation of the SCA.

The Court heard Plaintiffs' argument on admission of these documents at trial and concluded that although Plaintiffs were permitted to argue that they had consent to download and read Defendants' emails, they were not permitted to submit the documents to the jury. The Court explained that Meyer testified at trial that he did not read the documents during the relevant period, therefore, they could not form the basis for any belief on his part that he had authorization or consent to read Defendants' emails. Tr. 487.

The Court also found the documents were not relevant to what Plaintiffs were legally entitled to do with Defendants' data. The Court explained that the documents set out only what Plaintiffs were technically capable of doing as global administrators, they did not confirm what Plaintiffs were legally authorized to do with Defendants' data nor did they create a legal right of administrators to download and read Defendants' emails. Tr. 488.

Finally, the Court concluded the documents did not establish consent for Plaintiffs to read and download Defendants' emails because Plaintiffs failed to produce evidence that established Defendants agreed to the terms and conditions in those documents. At trial Plaintiffs' counsel asked Mittal if he was aware of "terms and conditions which govern [his] Microsoft usage" and whether he had "ever made an effort to look at such terms and conditions." Tr. 664. Mittal testified he "would not know about" those things and would not know "where to find them if [he] wanted to look" because "we actually buy softwares [*sic*] in India through resellers, and

resellers work in a very different mechanism where they have their own portal, and not of the complexity of any such platforms is extracted by the reseller, and all we get is license to use." Tr. 665. There was no evidence at trial of the terms and conditions applicable to Microsoft's products sold through the reseller mechanism described by Mittal. In addition, although Meyer testified about his knowledge of Microsoft policies, he did not testify about the terms and conditions appliable to Microsoft's products sold in India through the reseller model. The Court noted at the close of evidence that Plaintiffs failed to establish that exhibits 333 through 340 were the same agreement that Defendants received or would have received through the reseller paradigm.

The Court also finds that the jury had substantial evidence to conclude that Meyer's authority to view Defendants' emails was limited by a prior agreement that Argil DX, LLC would not read Defendants' emails without consent. *See, e.g.,* Trial Ex. 612, Tr. 388 (Q: Isn't it true that nobody from Axeno Consulting, including Mr. Mittal, gave you any personal permission to look at his emails or anyone else on his team? Isn't that true? A: I believe that's correct.). There was also substantial evidence from which the jury could find that Defendants asked Meyer to stop reading their emails, but Meyer continued to do so. *See, e.g.,* Tr. 611-12.

On this record the Court concludes Plaintiffs have not established that the exclusion of exhibits 333 through 340 is a sufficient basis to grant a new trial or a judgment as a matter of law in Plaintiffs' favor.

## II.    Rulings on Parties' Agreements

Plaintiffs assert the Court's decision at summary judgment that Defendant Argil DX LLC's contracts with EY belonged solely to Argil DX LLC and not to any alleged partnership between Plaintiffs and Defendants caused jury confusion because at trial the "same

circumstances" as Argil DX LLC's contract with EY were established as to Argil DX LLC and Defendants' agreement as to the server and "those factors caused Defendants to conclude that they were the joint owner of the server." Pls. Mot. at 8. According to Plaintiffs "[t]he jury was faced with knowing that a contract in Argil DX LLC's name was not of the partnership[1] but that a server that was in Argil DX LLC's name was of the partnership but that also there might not be a partnership but whether there was or was not a partnership it either did or didn't matter that Argil DX LLC had the contract for the server." Pls. Mot. at 9. Plaintiffs conclude that "where [this] ended calls for a new trial - a finding that there was no partnership, but a finding that the only possible owner of the server did not possess the rights of ownership, which in turn could not even be determined because the documents setting out the rights of ownership were excluded."

Plaintiffs' argument assumes that the jury must have found that Argil DX LLC was the only possible owner of the server. The jury, however, could have reached its verdict without coming to that conclusion. The jury was instructed as to the SCA claim that it was Defendants' burden to prove by a preponderance of the evidence that Plaintiffs' conduct was not authorized by the person or entity providing the electronic communication service. The jury may have concluded Argil DX, LLC was not the "owner" of the server and, therefore, was not a "provider" of the electronic communications service. The jury may have concluded Microsoft was the owner of the server, and that Argil DX, LLC was a mere subscriber to the Office 365 account, and that it did not "provide" this service to others with whom it shared the account. In the alternative the jury may have concluded that the server was jointly owned by Argil DX LLC and Axeno Consulting, that both qualified as the provider, and that both were required to consent to Argil DX LLC reading Axeno Consulting's emails. In that case, the jury may have concluded

---

[1] Referring to the EY contracts.

7 – OPINION & ORDER

that the provider did not authorize Meyer to access Defendants' files because only one half of the provider authorized access. There is substantial evidence from which the jury might have found that the server was jointly owned. For example, both Meyer and Mittal testified that the server was a joint expense, Tr. 126-27, 519, and Mittal testified that it was jointly owned. Tr. 519. The server had global administrators from both Argil DX LLC and Axeno Consulting and Meyer testified that the server was owned by the alleged partnership. Tr. 389.

There was a legally sufficient basis for a reasonable jury to find for Defendants on the issues surrounding Defendants' status as an owner or provider, the issue of the nonexistence of a partnership, and the alleged violations of the SCA. The jury's verdict was not against the clear weight of the evidence. The Court, therefore, concludes this is not sufficient basis to grant Plaintiffs' Motion.

### III. Claims Damages Rulings

Plaintiffs assert they were "deprived of showing the magnitude of harm caused by Defendants" when the Court, in its February 1, 2024 summary judgment opinion and other pretrial rulings excluded Plaintiffs' claims seeking forward-looking profits from the EY contracts. *See, e.g.,* O&O, ECF 220, at 57; PTC Tr., ECF 267, at 20-24. To the extent that Plaintiffs challenge the Court's summary judgment ruling, such challenge is not an appropriate basis for a new trial or judgment as a matter of law. In addition, Court relies on its analysis set out at summary judgment and pretrial proceedings and declines to find that Plaintiffs have established that a new trial or judgment as a matter of law is warranted on this basis.

Plaintiffs also assert the Court erred when it permitted Defendants to "ignore the concept of a Pretrial Order" and to offer evidence at trial of private and personal documents that Meyer downloaded to support Defendants' invasion of privacy claim. According to Plaintiffs,

8 – OPINION & ORDER

Defendants had contended before trial that Mittal's business emails were the sole basis of their privacy claim. Defendants, however, stated in their Answer to Plaintiffs' First Amended Complaint and Counterclaims that the basis for their invasion of privacy claim was that Defendants "have a reasonable expectation of privacy in their private email server containing confidential business and *personal* communications." ECF 59 ¶ 346 (emphasis added). Defendants also summarized the basis of their invasion of privacy claim in their Trial Memorandum as follows: "Mittal used his @argildx.com email account to engage in private communications both on a personal and professional level. He also kept private documents on his associated Microsoft Office 365 account. He expected those emails and documents were private," but Meyer covertly downloaded and read those "private emails and documents." Defs. Tr. Memo., ECF 245, at 5. In the Joint Witness Statement Defendants also included a witness who would testify about several of Defendants' confidential and personal documents that he discovered when searching through the data that Meyer had downloaded. The Court finds that Plaintiffs' assertion that the Court erred in permitting Defendants to offer evidence of personal and private documents that Meyer downloaded is unsupported by the evidence and insufficient to support a new trial or judgment as a matter of law.

In summary, the Court concludes that none of Plaintiffs' bases are sufficient to grant a new trial or judgment as a matter of law.

## CONCLUSION

The Court DENIES Plaintiffs' Combined and Alternative Motions Under Federal Rule of Civil Procedure 50(b) for Judgment as a Matter of Law or in the Alternative under Federal Rule

of Civil Procedure 59 for a New Trial, ECF 325.

    IT IS SO ORDERED.

    DATED:_____January 3, 2025_____.

                                          /s/ Marco Hernández
                                          MARCO A. HERNÁNDEZ
                                          United States Senior District Judge