IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON MEYER, an individual;
ARGIL DX LLC f/k/a ZAP
TECHNOLOGY SOLUTIONS LLC, a
Nevada limited liability company; and
ARGIL DX, putative partnership,

           Plaintiffs,

    v.

ANKUR MITTAL, an individual; AXENO
CONSULTING PVT. LTD. f/k/a
ARGILDX CONSULTING PVT. LTD.
f/k/a ACCUNITY SOFTWARE PVT.
LTD., an Indian private company; and
ADX CONSULTING INC., a Texas
corporation,

           Defendants.

No. 3:21-cv-00621-HZ

OPINION & ORDER

Adam D. Rose
Eric C. Lang
Rose Law Firm, P.C.
5200 Meadows Rd, Ste 150
Lake Oswego, OR 97035

       Attorneys for Plaintiffs

Sara Cotton
Mario Delegato
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suite 1900
Portland, OR 97204

1 – OPINION & ORDER

Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt P.C.
1420 Fifth Avenue
Suite 3400
Seattle, WA 98101

      Attorneys for Defendants

HERNÁNDEZ, Senior Judge:

The matter is before the Court on Indian Defendants' Motion for Attorneys' Fees and Costs, ECF 317, and Defendants' Bill of Costs, ECF 314. For the reasons that follow, the Court grants Indian Defendants' Motion for Attorneys' Fees and awards attorney fees to Defendants in the amount of $1,307,407.50. The Court also awards taxable costs to Defendants in the amount of $45,540.10 and non-taxable costs in the amount of $78,710.91.

## BACKGROUND

The parties are familiar with the background of this matter. Accordingly, the Court recites only facts relevant to the pending Motion.

This case concerns a business relationship between Plaintiffs Jason Meyer, Argil DX LLC (aka Zap Technology), and Argil DX, and Defendants Ankur Mittal, Axeno Consulting PVT LTD (fka Argildx Consulting PVT LTD, Accunity Software PVT LTD), and ADX Consulting Incorporated.

After various rulings by the Court on the parties' motions for summary judgment this matter went to trial before a jury on June 24, 2024. On July 1, 2024, the jury returned a Verdict in which it found in relevant part that Plaintiffs did not prove that Argil DX LLC and Axeno Consulting formed a partnership, that Axeno Consulting intentionally interfered with the contract between Argil DX LLC and Ernst & Young ("EY"), or that Axeno Consulting breached a fiduciary duty to Argil DX LLC with respect to the EY contract; Mittal proved his invasion of

privacy counterclaim against Meyer and Argil DX LLC and Mittal and Axeno Consulting proved their counterclaim for violation of the Stored Communications Act ("SCA").

On October 15, 2024, Defendants filed a Motion for Attorneys' Fees and Costs and a Cost Bill seeking attorney fees in the amount of $1,302,277 and costs totaling $124,251.01. Plaintiffs filed their Response objecting to Defendants' requested fees and costs. In their Reply Defendants amended their fees requested to $1,254,773, but added a request for attorney fees of $72,661.50 for their Reply for a total of $1,327,434.50 in attorney fees. Defendants continue to seek costs of $124,251.01. The Court took the matter under advisement on December 2, 2024.

## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Defendants seek attorney fees they incurred litigating their counterclaim for violation of the Stored Communications Act ("SCA").

The SCA provides: "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may . . . recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2707(a). The SCA further provides that "appropriate relief includes . . . a reasonable attorney's fee and other litigation costs reasonably incurred." 18 U.S.C. § 2707(b)(3).

Although the Ninth Circuit has not addressed the issue, other circuits have concluded that an "award of attorneys' fees for violations of the SCA is left to the district court's discretion." *Ackel v. Martynenko*, No. 23-30449, 2024 WL 1465388, at *1 (5th Cir. Apr. 4, 2024)(citing *Domain Prot., LLC v. Sea Wasp, LLC*, 23 F.4th 529, 538 (5th Cir. 2022)("Attorney's fees are . . . discretionary when a plaintiff proves a violation of the Stored Communications Act.")). *See also Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 977 (11th Cir. 2016)(under the SCA, "[w]e may

reverse a district court's decision to deny attorney's fees only if we find that the district court abused its discretion"); *Grissom v. Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008)(same).

## I.    Defendants are Entitled to Attorney Fees

"There is scant case law on the determination of whether to award attorneys' fees under the SCA." *Kamel v. 5Church, Inc.,* No. 3:17-CV-507-RJC-DCK, 2020 WL 4547161, at *2 (W.D.N.C. Aug. 6, 2020). "Nevertheless, Congress has demonstrated a clear interest in enforcing the fee shifting provisions of the SCA to deter future violations of the statute." *Cheng v. Romo,* No. CIV.A. 11-10007-DJC, 2014 WL 882796, at *2 (D. Mass. Mar. 6, 2014). For example, the Senate noted in passing the Video Privacy Protection Act that:

> The civil remedies section puts teeth into the legislation, ensuring that the law will be enforced by individuals who suffer as the result of unauthorized disclosures. It provides that an individual harmed by a violation of the Act may seek compensation in the form of . . . attorneys' fees and costs.
>
> Statutory damages are necessary to remedy the intangible harm caused by privacy intrusions. Similar remedies exist in [the SCA] as revised by this committee in 1986. The absence of such a remedy in the Privacy Act of 1974 is often cited as a significant weakness.

*Id.* (quoting S.Rep. No. 100–599, at 8 (1988), reprinted in 1988 U.S.C.C.A.N. 4342–1, 4342–8; and citing *Sterk v. Redbox Automated Retail, LLC,* No. 11–1729, 2012 WL 3006674, at * 4 (N.D. Ill. July 23, 2012)(comparing Video Privacy Protection Act with SCA)). "The importance of deterrence is no less pronounced" when, as here the jury found Plaintiffs' "actions to be knowing and intentional." *Id.* (citing 18 U.S.C. § 2707; *Tech Sys., Inc. v. Pyles,* No. 12–cv–374, 2013 WL 4033650, at *4 (E.D. Va. Aug.6, 2013)(awarding fees and costs based upon intentional conduct)).

When courts have declined to award fees to successful SCA parties they have done so due to egregious conduct. For example in *Vista Mktg., LLC v. Burkett,* 812 F.3d 954 (11th Cir.

2016), the Eleventh Circuit held the district court did not abuse its discretion when it declined to award the plaintiff attorney fees even though the plaintiff had "successfully enforced liability in this action." *Id.* at 978. The district court had found "it is evident that [the] case . . . is being driven by emotions and, perhaps, personal vendetta" and the Eleventh Circuit noted the "litigation seems motivated by vindictiveness (as opposed to a bona fide desire to enforce rights)." *Id. See also Domain Prot., LLC v. Sea Wasp, LLC*, No. 4:18-CV-792, 2020 WL 2557043, at *15 (E.D. Tex. May 20, 2020), *aff'd sub nom. Domain Prot., L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529 (5th Cir. 2022)("Domain Protection has time and again litigated in an unbecoming manner, distorted the record, and misstated the law. . . . As such, the Court, in its discretion, finds that Domain Protection is not entitled to attorneys' fees under § 2707(b)(3).").

Here the jury found Meyer violated the SCA, that his conduct was intentional, and that he knew his access exceeded his authorization. In addition, the evidence at trial established that Meyer continued to download Defendants' emails throughout the first 18 months of this litigation and stopped only after this Court issued a Status Quo Order. There is no indication that Defendants' case was driven by vindictiveness or a personal vendetta or anything other than a bona fide desire to enforce their rights. Finally, Defendants obtained a high degree of success including an agreed injunction at the close of trial and a punitive damages award of $187,500. On this record the Court concludes that an award of attorney fees is appropriate.

## II.    Fees Related to SCA Counterclaim

Although Defendants seek attorney fees pursuant to the SCA, they also seek some of their fees incurred in litigating Plaintiffs' partnership theories, which did not provide an independent basis for shifting attorney fees. Defendants assert that this is appropriate because Plaintiffs' primary defense to the SCA counterclaim was that the parties had formed a

partnership and that Meyer, as the alleged CEO, had the right to view and download Defendants'
emails to protect the partnership. Plaintiffs relied on that argument throughout the action.
According to Defendants their SCA counterclaim and the partnership claims are inherently
related, involve a common core of facts, and arose out of a common course of conduct. Thus, the
question whether there was a partnership was inextricably intertwined with Defendants' SCA
counterclaim and they are entitled to attorney fees related to litigation of the partnership claims.

Plaintiffs assert that Defendants should not be permitted to recover for work done on
Plaintiffs' partnership claims because the partnership issues were in the case before Defendants
asserted their SCA counterclaim and defense counsel's billing records make it impossible to
segregate billing for partnership matters from SCA matters.

The Supreme Court has noted that some actions "will present only a single claim," but
others "will involve a common core of facts or will be based on related legal theories [so that]
[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult
to divide the hours expended on a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424,
435 (1983). "Such a lawsuit cannot be viewed as a series of discrete claims." *Id.* Differentiating
time spent between fee-bearing and non-fee bearing claims is particularly difficult when they are
based on the same facts. *Manriquez v. Vangilder*, No. 21-15403, 2022 WL 1184164, at *2 (9th
Cir. Apr. 21, 2022). *See also United States v. J-M Mfg. Co., Inc.*, No. EDCV 06-55-GW-PJWX,
2021 WL 12302353, at *4 (C.D. Cal. Aug. 24, 2021)(noting general principles that govern fee
applications including "(1) wh[en] attorney work is performed to advance multiple claims
simultaneously, courts cannot artificially apportion that work among the several claims and
cannot view the lawsuit as 'a series of discrete claims'; and (2) wh[en] work is done to advance

both a successful fee-bearing claim and a non-fee-bearing claim, fees for that work are recoverable").

With respect to Plaintiffs' point that the partnership claims predated Defendants' SCA counterclaim, Defendants have specifically excluded from their request fees that they accrued before the inclusion of the SCA counterclaim other than fees for drafting that counterclaim. Specifically, Defendants have excluded all fees incurred by Chernoff Vilhauer, which was defense counsel at the time the litigation was primarily focused on whether the parties had formed a partnership. Defendants have also excluded most of the fees incurred by Schwabe Williamson & Wyatt before April 25, 2022, which was the date on which Defendants filed their Answer that included the SCA counterclaim.

In addition, Defendants state that, when possible, they have "segregated out fees that are only tangentially related" to their SCA counterclaim. For example, Defendants have identified a total of $82,604 for time associated with "work related to expert witnesses – *i.e.*, Ms. Morones." Defs. Reply, ECF 339, p. 7. Although "a substantial portion of Ms. Morones's work concerned rebutting Plaintiffs' partnership theories," Defendants did not include those opinions in her opening report. Nevertheless, those issues "dominated her rebuttal report, and she testified about them extensively at trial," including "her review of tax returns and QuickBooks files, which unveiled how Plaintiffs accounted" for revenues and expenses. *Id.,* p. 8. In their initial Motions Defendants excluded more than $10,000 in billing for this work with Morones. Defs. Mot., ECF 317, App. C; Defs. Reply, App. G. In their Reply Defendants have excluded eight additional time entries for a further reduction of $8,754. Defendants also excluded an additional $9,959.50 in fees sought for "ADX related work" to which Plaintiffs objected as unrelated to the SCA counterclaim. Defs. Reply p. 8.

The Court concludes on this record that the partnership claims and the SCA counterclaim are inextricably intertwined and defense counsel's work was done both to advance the fee-bearing SCA counterclaim and to rebut the non-fee-bearing partnership claims. Moreover, Defendants have evaluated their billing and excluded substantial fees that are unrelated or only tangentially related to their SCA counterclaim. The Court declines to generally exclude time that defense counsel billed to litigate the partnership issue when assessing fees for the SCA counterclaim and finds that Defendants have effectively reduced and/or eliminated hours that are excessive, redundant, or otherwise unnecessary.

### III.    Fees Awarded Against All Plaintiffs

Plaintiffs assert no attorney fees should be awarded against Meyer because "he did not . . . own the server at issue" and the "partnership, though found not to exist, was between entities, not Mr. Meyer." Pls. Resp., ECF 334, at 7. The jury, however, found Meyer personally liable for violations of the SCA and concluded he had full knowledge that he exceeded his authorization when he downloaded and viewed Defendants' emails and information. Verdict, ECF 277, at 4. Defendants also note that Meyer transferred nearly half a million dollars from Argil DX LLC to himself in order to pay his personal mortgage at a time when the LLC owed money to Axeno. Trial Tr., ECF 293, pp 309-10; Tr. Ex. 571 pp. 3-4. Meyer also agreed to post a bond to stay collection activity against himself, not Argil DX LLC, leaving the LLC open to collection. Pls. Mot. for Rule 62(b) Stay, ECF 331, at 2. Finally, Meyer's assertion that the partnership was between entities, not Meyer is unavailing. Throughout the entirety of this action Meyer claimed he was personally a partner in the alleged partnership.

Plaintiffs also suggest it could be difficult for Meyer to satisfy an award of attorney fees because Argil-USA has "lost significant revenues" and Meyer "is saddled with hundreds of

thousands of dollars of judgment debt on the invoices in this case." *Id.* at 10. It is unclear whether ability to pay is a factor courts consider when awarding attorney fees under the SCA. Plaintiffs do not cite a case in which a court has considered that factor in the SCA context and instead rely on an ERISA case, *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9ᵗʰ Cir. 1990). Even if the ability to pay an attorney fee award was a consideration under the SCA, Meyer has not established that he would be unable to pay any fee award. Meyer testified at trial that he owns a 5,600 square foot house situated on seven acres, paid for in part by funds removed from the LLC. In addition, Meyer was able to obtain a bond for himself in the amount of $230,000.

On this record the Court denies Plaintiffs' request that the Court not award attorney fees against Meyer.

## IV.    Amount of Attorney Fees

"The Supreme Court has stated that the lodestar is the 'guiding light' of its fee-shifting jurisprudence, a standard that is the fundamental starting point in determining a reasonable attorney's fee." *Van Skike v. Dir., Off. of Workers' Comp. Programs*, 557 F.3d 1041, 1048 (9th Cir. 2009)(quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). *See also Chavan v. Cohen*, No. C13-01823 RSM, 2015 WL 4077323, at *5 (W.D. Wash. July 6, 2015)(employing the lodestar method to calculate reasonable attorney fees under the SCA). Under the lodestar method, the court determines the appropriate hourly rate for the work performed and then multiplies that amount by the number of hours properly expended in doing the work. *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1671-73 (2010).

To determine a reasonable hourly rate, the court should "consider[] the experience, skill, and reputation of the attorney requesting fees." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007)(quotation omitted). "Generally, when determining a reasonable hourly rate, the

relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The party seeking an award of fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emp. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008)(quotations omitted). When "determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009)(quoting *Hensley*, 461 U.S. at 434).

### A. Reasonable Hourly Rate

Defendants seek fees for attorney Sara Cotton at a rate of $510 per hour, attorney Nika Aldrich at a rate of $540 per hour, paralegal David Aldred at a rate of $285 per hour, and paralegal Samantha Burnside at rates between $150 and $210 per hour. Plaintiffs do not object to any of these hourly rates.

Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See Roberts v. Interstate Distrib. Co.*, 242 F.Supp.2d 850, 857 (D. Or. 2002)(when determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates). The most recent OSB Economic Survey was published in 2022.[1]

---

[1] The most recent OSB Economic Survey is available at
https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf

### 1.    Attorney Sara Cotton

Cotton has been a member of the Oregon State Bar for 16 years, has experience "in cases involving business disputes between co-owners," and has tried "numerous partnership cases to conclusion." Aldrich Decl., ECF 318, ¶ 9. Cotton was selected to Oregon Super Lawyers Rising Stars List for Business Litigation every year from 2012 through 2018. *Id.* ¶ 10. Cotton's fee request is supported by Aldrich's Declaration. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with 16 years of experience is $425 and the 95th percentile hourly rate was $683. For business and corporate litigation in Portland the median hourly rate was $450 and the 95th percentile was $774. Considering inflation the Court finds Cotton's requested rate of $510 per hour is reasonable.

### 2.    Attorney Nika Aldrich

Aldrich graduated from law school in 2007 and worked in New York where he "helped litigate several large intellectual property cases." Aldrich Decl. ¶ 2. Aldrich joined Schwabe, Williamson & Wyatt in 2015 and became a member of the Oregon State Bar in 2016. Aldrich was an adjunct professor of patent law at Lewis and Clark law school from 2016 through 2023. He has "handled a large number of trademark and data privacy cases, including cases brought under the [SCA] and the Computer Fraud and Abuse Act. He has tried jury cases and litigated appeals of intellectual property cases before the Federal, Third, and Ninth Circuit Courts of Appeals and the United States Supreme Court." *Id.* ¶¶ 2-4. Aldrich's fees request is supported by his Declaration. According to the 2022 OSB Economic Survey, the median hourly rate for Portland attorneys with between 16 and 20 years of experience is $425 and 95th percentile hourly rate was $683. For business and corporate litigation in Portland the median

hourly rate was $450 and the 95th percentile was $774. The Court finds Aldrich's requested rate of $540 per hour is reasonable.

### 3.    Paralegal David Aldred

Aldred graduated with a degree in paralegal studies in 1998 and has been a paralegal for over 25 years. Currently Aldred is a senior paralegal. In 2014 this Court found that the rate of $125 per hour was a reasonable rate for a paralegal. *See Nance v. May Trucking*, No. 3:12-cv-01655, 2014 WL 6633111, at *4 (D. Or. 2014). The Court noted "a reasonable hourly rate for a paralegal should not exceed that of a first-year associate," and concluded that a rate of $125 per hour for a paralegal with eight years of experience was reasonable given the lack of evidence in the record showing that the individual in question had any paralegal certificates or other qualifications. *Id.* In 2018, however, the Court concluded that a rate of $200 per hour was reasonable for a paralegal who had "six years of paralegal experience [and] both a paralegal certification and a law degree." *Brown v. Cascade Mgmt., Inc.*, No. 3:15-CV-01585-HZ, 2018 WL 4207097, at *9 (D. Or. Sept. 4, 2018). The median rate for a first-year associate in Portland in the 2022 Survey was $300. Given Aldred's 25 years of experience and degree in paralegal studies, the Court concludes that his requested rate of $285 per hour is reasonable.

### 4.    Paralegal Samantha Burnside

Defendants request rates between $150 and $210 per hour for paralegal Samantha Burnside's time. Defendants do not provide any information about Burnside's experience, certifications, or degrees. Several cases in this district have concluded in recent years that paralegal fees of $175 are reasonable under similar circumstances. *See, e.g., G&G Closed Cir. Events, LLC v. Rojas*, 2021 WL 1342742, at *1 (D. Or. Apr. 9, 2021)(awarding paralegal fees at hourly rate of $175); *Nufarm Americas Inc. v. Delta Ridge Holdings, LLC*, No. 22-CV-

581-HL, 2024 WL 52973, at *3 (D. Or. Jan. 4, 2024)(awarding paralegal fees at hourly rate of $175 for work done from 2021 through 2023 noting "[c]ourts in this District have accepted $175 per hour as a reasonable rate for paralegals."). The Court concludes that absent evidence of Burnside's experience, paralegal certificates, other qualifications, the requested rate of $150 per hour is reasonable for hours expended in 2022 and a rate of $175 per hour is reasonable for hours expended in 2023 and 2024.[2]

### B. Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434; *see also Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

In addition to Plaintiffs' objections to Defendants' requested fees discussed above, Plaintiffs also assert Defendants have not established their requested hours expended are reasonable for five reasons: (1) Defendants seek to recover for fees billed for time accrued before "they were alerted to the SCA [counter]claim"; (2) Defendants seek to recover time billed for "unsuccessful and unnecessary forays"; (3) many of defense counsel's entries are block billed; (4) counsel billed excessive hours on research given their hourly rate; and (5) the amount sought is excessive.

---

[2] See Exhibit 1 to this Opinion and Order for calculation of Burnside's fees.

1.    **Fees Accrued Before the SCA Counterclaim**

Plaintiffs assert that the Court should not grant Defendants' request for fees accrued "before they were alerted to the SCA [counter]claim." Plaintiffs allege that Defendants have contended that the "genesis" of their SCA counterclaim was "in October 2022 [when Defendants] took Mr. Meyer's deposition and [they] learned all of this." Trial Tr., ECF 291, p. 93. Mittal testified at trial "when he had entered Mr. Meyer's deposition, at that time we got to know that Mr. Meyer had taken backups . . . that's when we got to know." Trial Tr., ECF 295, p. 611.

Defendants dispute the assertion that they first discovered the SCA counterclaim in October 2022. Defendants contend they knew about the SCA violations before October 2022 as demonstrated by the fact that they included the SCA counterclaim in their Answer filed April 25, 2022. In that counterclaim Defendants alleged "Plaintiffs . . . have improperly accessed the Indian Defendants' confidential and proprietary, internal emails on the email server on one or more occasions, and misappropriated the Indian Defendants' private email communications without the Indian Defendants' permission" in violation of the SCA. Answer, ECF 59, ¶¶ 325, 350-53. Although Defendants only learned the specifics of how Plaintiffs violated the SCA in October 2022, litigation of that claim began no later than April 25, 2022. To account for this Defendants excluded all fees incurred by Chernoff Vilhauer, defense counsel until April 6, 2022, at which time the litigation was primarily focused on whether the parties had formed a partnership. Defendants also excluded all fees incurred by Schwabe Williamson & Wyatt before April 25, 2022, except for the fees billed specifically in relation to the preparation of the counterclaims.

The Court, therefore, declines Plaintiffs' request that the Court not award attorney fees for litigation of the SCA counterclaim that accrued before October 2022.

### 2.    Time Billed For "Unsuccessful And Unnecessary Forays"

Plaintiffs assert Defendants should not be compensated for time they spent on "unsuccessful and unnecessary forays." Plaintiffs point to four motions that they assert the Court should not award Defendants fees for litigating: (1) Defendants' June 2023 Motion to Compel, which the Court granted in part and denied in part; (2) Defendants' September 2023 Motion to Strike Expert Report of Tiffany R. Couch, which the Court denied; (3) Defendants' post-verdict request for $665,000 in compensatory damages because the Court awarded Defendants only $1,000 in compensatory damages; and (4) Defendants' December 2022 Motion for Sanctions.

Defendants note they have already excluded most of the fees related to the June 2023 Motion to Compel and the September 2023 Motion to Strike. In their Reply Defendants disagree that the fees identified by Plaintiffs in their Response related to these two motions are not recoverable, however, Defendants withdrew their request for fees as to $6,574 of fees related to the Motion to Compel and for $1,350 for the Motion to Strike. In addition, Defendants withdrew their request for fees of $20,866.50 relevant to the compensatory damages issue.

In December 2022 Defendants filed a Motion for Summary Judgment and for Sanctions. Plaintiffs do not challenge Defendants' request for fees for the summary judgment portion of the Motion. Plaintiffs, however, assert the Court should not award the fees related to the request for sanctions because Defendants sought "a panoply of extreme relief and insinuate[ed] the possibility of ethical and criminal complaints" against Plaintiffs' counsel and

"infected this litigation with scandalous criminal accusations ('Plaintiffs stole the Axeno Emails in violation of two separate, federal, criminal statutes, in addition to multiple sections of Oregon's Computer Crime law') and professional and ethical lapses." Pls. Resp. p. 14 (quoting Defs. Mot. for Sanctions, ECF 106, p. 30). Defendants assert the request for sanctions was inextricably intertwined with the motion for summary judgment and relied on the same set of operative facts, therefore, the legal expenses need not be apportioned between summary judgment and sanctions. *See Moonbug Entm't Ltd. v. Babybus (Fujian) Network Tech. Co. Ltd.*, 2022 WL 1289048, at *4 (N.D. Cal. Apr. 29, 2022). With respect to Plaintiffs' assertion that Defendants' request for sanctions included "scandalous criminal accusations," *i.e.¸* that Plaintiffs "stole the Axeno Emails in violation of two separate, federal criminal statutes," Defendants point out that the jury found Plaintiffs violated the SCA and, therefore, Defendants' assertions in the Motion for Sanctions were not without merit. The Court finds Defendants' request for sanctions was inextricably intertwined with their request for summary judgment accordingly, Defendants need not apportion their billing on the combined motion. The Court, therefore, declines Plaintiffs' request not to award Defendants their fees for work related to the request for sanctions.

### 3.    Block Billing

Courts in this district have defined block billing as "'any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time.'" *Bala v. Oregon Health & Sci. Univ.*, No. 3:18-CV-00850-HZ, 2024 WL 3785975, at *8 (D. Or. Aug. 12, 2024)(quoting *Ayala v. Cook Fam. Builders LLC,* No. 3:17-CV-266-PK, 2018 WL 1631453, at *4 (D. Or. Mar. 6, 2018)(collecting cases), findings and

recommendation adopted, No. 3:17-CV-266-PK, 2018 WL 1629863 (D. Or. Apr. 3, 2018)). The district court has the authority to reduce block-billed hours. *Id.* (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)). When the block billing impedes the district court's ability to determine that certain hours were reasonably expended, it is reasonable to reduce those hours. *Id.* A district court may decrease block-billed entries by a flat percentage, but must explain why the chosen reduction is reasonable. *See Welch*, 480 F.3d at 948.

           Plaintiffs assert that Defendants' time records are "rife with block billing" and requests that the Court reduce block billed time by 50 percent. Defendants assert that although some of their time entries are aggregated entries that contain different tasks, this is not the kind of block billing that presents the issues that concern courts. Rather, the entries at issue contain closely related but discretely identified tasks that may be aggregated into a single billing. In addition, Defendants point out that they closely examined their billing records and when there was a non-fee bearing issue contained in a block bill, Defendants reduced their requested fee for that entry by 50 percent. In *Bala* this Court found billing entries similar to those objected to by Plaintiffs here not to be block billing because "they involve closely related but discretely identified tasks that are properly viewed as a unit." 2024 WL 3785975, at *8. For example, on May 30, 2024, Cotton spent 8.9 hours as follows: "Work on jury instructions; numerous emails regarding the same; work with Nika on the same; additional trial preparation; draft special instructions; research improper means/improper motives; work on additional instruction issues." Aldrich Decl., Ex. 17, p. 180. On May 13, 2024, Aldrich spent 6.1 hours as follows: "Call with S. Cotton regarding trial strategy; emails with opposing counsel about logistics for pretrial filings; draft and revise trial brief; review exhibits for trial and work on exhibit objections; draft and revise itemized list of economic damages; work on jury instructions." *Id.* p. 177. Finally, the

entries were sufficiently detailed that they did not impede the Court's ability to determine whether the listed hours were reasonable. In *Kittok v. Leslie's Poolmart, Incorporated*, the court questioned whether similarly specific time entries qualified as block billing because they "include[d] several tasks, [but] they [were] extremely specific and include[d] discrete tasks, and [did] not raise any concerns about how the time was spent." 687 F. Supp. 2d 953, 963-64 (C.D. Cal. 2009). The court noted "one challenged item is 'Preparation for and meeting with Mr. Chang in our office to hold the pretrial meeting of counsel; discussed case; discussed settlement; he gave me a copy of Ms. Kittok's deposition.'" *Id.* It noted "Plaintiff's counsel certainly could have broken down this 3.3 hour block into meeting preparation time and the meeting time itself, but was under no obligation to do so. The entry would only be a problem where it obscures the nature of some of the work claimed." *Id.* (quotation omitted).

The Court finds the challenged entries involve closely related but discretely identified tasks that may be properly viewed as a unit and they are sufficiently detailed that the Court is able to determine whether the hours spent were reasonable. Accordingly, the Court declines to decrease Defendants' requested fees for block billing.

### 4.    Counsel's Research Billing

Although Plaintiffs do not challenge defense counsel's requested hourly rates, they assert that Aldrich and Cotton billing 439 hours for legal research at rates over $500 per hour is excessive. Plaintiffs suggest that research should have been "billed at [the] more appropriate rate" of $335 per hour used by attorney Maria Delegato. Defendants note that Delegato was "in trials for separate matters or otherwise indisposed during key points during the case, including during the period when the motion for summary judgment on the SCA counterclaim was being drafted," therefore, to the extent that Plaintiffs assert Delegato should

have done more of the research, that was not possible. Defs. Reply p. 14, n.7. In addition

Defendants note that "incorporating associate assistance for legal research can be inefficient

because of the amount of time necessary to ramp the associate up on the relevant facts and legal

theories in the case." *Id.* Finally, the Court finds that two attorneys billing a total of 439 hours for

research over two years in this matter is not excessive. This case was factually and legally

complex; involved several novel legal questions; and required a deep and nuanced understanding

of the SCA, partnership law, and the intersection of those two areas as they applied to the facts

here. Accordingly, the Court declines to reduce Defendants' requested fees for legal research

performed by Aldrich and Cotton.

### 5.    Total Fees

Relying on out-of-circuit cases Plaintiffs assert that "a party seeking

excessive attorneys fees should have its motion outright denied." Pls. Resp. p. 21 (citing *In First*

*State Ins. Group v. Nationwide Mut. Ins. Co*., 402 F.3d 43 (1st Cir. 2005); *Lewis v. Kendrick*,

944 F.2d 949, 958 (1st Cir.1991); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir.1980)).

Plaintiffs contend the fees requested are "clearly excessive" because Defendants are seeking 89

percent of their total fees billed in this matter and it is unreasonable to ask the Court to decide

that only 11 percent of this case was unrelated to Defendants' SCA counterclaim.

As Defendants noted in their Motion "very few issues in this case were *not*

relevant to the SCA [counter]claim." Defs. Mot. p. 16 (emphasis in original). The Court has

already found that the partnership claims were inextricably intertwined with the SCA

counterclaim and other issues were interrelated with the existence of a partnership such as

fiduciary duties, alleged intentional interference, fraudulent statements to Ernst and Young, and

Plaintiffs' revenues for projects for third parties. The Court does not find Defendants' fees to be

excessive given the complexity of this case legally and factually. In the absence of any indication that the Ninth Circuit has adopted the reasoning of the cases relied on by Plaintiffs, this Court declines to exercise its discretion and deny Defendants' requested fees in their entirety.

In Summary, the Court awards Defendants attorney fees of $1,252,722.50 for fees accrued before Defendants' Reply in support of their Motion for Attorneys' Fees.[3]

## V.    Fees for Attorneys' Fee Reply

Defendants also request fees of $72,661.50 incurred in preparing their Reply to the Motion for Attorneys' Fees. Defendants provide supplemental time entries for work performed by Aldrich, Cotton, Aldred, and Burnside as well as time billed by Jason Wrubleski, Craig Russillo, Julia Davis, Scott Eads, and Mario Delegato totaling 167.8 hours of work.

Defendants did not provide the Court with any information about the experience or qualifications of Wrubleski, Russillo, Davis, Eads, or Delegato. The Court is, therefore, unable to evaluate the "experience, skill, and reputation of the attorney requesting fees." Accordingly, the Court denies Defendants' request for fees for work performed by these individuals.[4]

The Court has already approved the rates requested by Aldrich, Cotton, and Aldred and approved a rate of $175 for hours worked by Burnside in 2024. The Court also finds that the 133.5 hours expended by these individuals is reasonable. Accordingly, the Court awards Defendants attorney fees in the amount of $54,685 for work done on the Reply briefing.

---

[3] See Exhibit 2 to this Opinion and Order for fee calculations for work done prior to the Reply.
[4] See Exhibit 3 to this Opinion and Order for fee calculations for the Reply.

## DEFENDANTS' COSTS

### I.  Taxable Costs

#### A.  Standard

Federal Rule of Civil Procedure 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." This rule creates a presumption in favor of awarding costs to a prevailing party and "the losing party must show why costs should not be awarded." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003).

28 U.S.C. § 1920 allows a federal court to tax specific items as costs against a losing party pursuant to Federal Rule of Civil Procedure 54(d)(1). Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation for court-appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute. *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 338-

39 (2019). The district court has discretion to refuse to award costs, but it must provide specific

reasons for doing so. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014)

(citing *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000)).

### B.    Analysis

In their Bill of Costs Defendants sought taxable costs of $51,717.01 comprised of

fees for service of summons, transcripts, witnesses, and exemplification and copying costs.

Plaintiffs objected to Defendants' requested costs of $6,721.91 for witness fees for Mittal.

Defendants withdrew their request for those costs in their Reply. The Court has reviewed the

remaining items listed in Defendants' Bill of Costs and concludes they are properly recoverable

under § 1920. The Court, therefore, awards Defendant taxable costs in the amount of $45,540.10.

## II.    Non-Taxable Costs

Defendants seek non-taxable costs of $124,251.01, less any costs that are awarded as

taxable costs, pursuant to the SCA, which provides that in addition to attorney fees the Court

may award "other litigation costs reasonably incurred." 18 U.S.C. § 2707(b)(3). Defendants seek

costs for expert witness fees, online research, and meals during trial. Defendants do not provide

authority for their assertion that nontaxable costs are "other litigation costs" under the SCA. The

Ninth Circuit has not addressed whether nontaxable costs such as expert witness fees, online

research, and meals may be awarded to the prevailing party under the SCA.

"[T]here is Ninth Circuit authority permitting prevailing plaintiffs to recover non-taxable

costs" when the statute allows for "the cost of the action together with reasonable attorney fees."

*Yuga Labs, Inc. v. Ripps*, No. 222CV04355JFWJEMX, 2024 WL 489248, at *11 (C.D. Cal. Jan.

11, 2024)(citing *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010)). The

non-taxable costs include "reasonable out-of-pocket litigation expenses that would normally be

charged to a fee paying client, even if the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920." *Grove,* 606 F.3d at 581. Courts have recognized the costs of computerized research, postage, investigator expenses, copying costs, hotel bills, meals, messenger service and employment record reproduction as falling in this category. *See Tr. of the Constr. Indus. and Laborers Health and Welfare Tr. v. Redland Ins. Co*, 460 F.3d 1253, 1258 (9th Cir. 2006); *Ahanchian v. Xenon Pictures, Inc*., No. CV 07-6295-JFW-Ex, 2008 WL 11411621, *3 (C.D. Cal. Dec. 29, 2008).

In *Rimini St., Inc. v. Oracle USA, Inc*., the Ninth Circuit affirmed an award of non-taxable costs to the prevailing party under the Copyright Act because § 505 of that Act allows for the recovery of "full costs" as opposed to just "costs" and, therefore, costs were not limited to those set out in § 1920. 879 F.3d 948, 965–966 (2018), *overruled by Rimini St., Inc. v. Oracle USA, Inc*., 586 U.S. 334 (2019)(citing *Twentieth Century Fox v. Entertainment Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005)). The Ninth Circuit did not address *Grove.* The Supreme Court accepted certiorari to address a split in the circuit courts regarding whether "the Copyright Act's reference to 'full costs' authorizes a court to award litigation expenses beyond the six categories of 'costs' specified" in § 1920. 586 U.S. at 336. The Supreme Court held that when "federal statutes simply refer to 'costs' . . . federal courts are limited to awarding the costs specified in §§ 1821 and 1920" and concluded that the Copyright Act's authorization to award "full costs" did not permit the award of non-taxable costs. 586 U.S. at 341. The Court, however, addressed the Copyright Act's grant of authority to award non-taxable costs only in response to an argument made by the defendant that the Court concluded would "render the second sentence of § 505 largely redundant." *Rimini*, 586 U.S. at 345. The Court did not reference or address the *Grove* line of cases that permitted awards of non-taxable costs.

Relying on *Rimini*, the Ninth Circuit recently held that the "Lanham Act does not . . . provide the 'explicit statutory authority' required to award litigation expenses beyond the six categories of 'costs' specified by Congress in the general costs statute" even though the Lanham Act provides that successful plaintiffs are entitled to "the costs of the action." *San Diego Comic Convention v. Dan Farr Prods.*, 807 F. App'x 674, 676–77 (9th Cir. 2020)(15 U.S.C. § 1117(a)). Like the Court in *Rimini,* however, the Ninth Circuit did not acknowledge or discuss *Grove.*

It appears, therefore, that "there are two lines of authority in the Ninth Circuit, neither of which explicitly recognizes nor addresses the existence of the other. The first is the *Grove* line of cases, which authorizes awards of non-taxable costs as a component of statutorily authorized reasonable attorneys' fees. The second is . . . *San Diego Comic Convention*, which follows . . . *Rimini.*" *Yuga Labs,* 2024 WL 489248, at \*12. In *Yuba* the court noted that "[g]iven *Rimini* . . . it is likely that the *Grove* rule will ultimately be abrogated. Nonetheless, *Grove* remains the law of the circuit, and *Rimini* does not directly contradict it." *Id.*, at \*13. The court could not "say that *Rimini* is 'clearly irreconcilable' with *Grove,* and ultimately decided to follow *Grove* and to award non-taxable costs. *Id.* (citing *Valdivia v. Schwarzenegger*, 599 F.3d 984, 990 n.4 (9th Cir. 2010) ("[A]s a three-judge panel, and with no intervening Supreme Court or Ninth Circuit precedent, we are bound by this court's[previous] holding"); *United States v. Vasquez–Ramos*, 531 F.3d 987, 991 (9th Cir. 2008)("We are bound by circuit precedent unless there has been a substantial change in relevant circumstances or a subsequent en banc or Supreme Court decision that is clearly irreconcilable with our prior holding" (internal citations omitted)). The Court finds *Yuga* to be well reasoned and adopts its reasoning. The Court, therefore, concludes it may award non-taxable costs under the SCA.

Plaintiffs assert the Court should not award Defendants their non-taxable costs because Defendants "have made no effort to link the costs to the SCA [counter]claim" and Defendants should "recover costs in proportion" to their attorney fees. "[I]t is . . . 'within the discretion of a district court to require each party to bear its own costs' when the judgment is mixed, or to apportion costs between the parties on successful and unsuccessful claims." *Ignite Spirits, Inc. v. Consulting by AR, LLC,* No. 221CV1590JCMEJY, 2024 WL 1701212, at *3 (D. Nev. Mar. 14, 2024)(*Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996)). Defendants achieved a high level of success and, as set out by Defendants in their Motion, Plaintiffs repeatedly resisted efforts to settle this matter. In addition, the SCA counterclaim was related to many issues in this case and costs accrued across claims. In fact, a substantial amount of costs were related to trial, at which Defendants prevailed on Plaintiffs' partnerships claims as well as on their SCA counterclaim. Finally, Defendants explain in their Motion that they have already reduced or declined to seek certain costs. The Court, therefore, declines to exercise its discretion to apportion the non-taxable costs. Accordingly, the Court awards Defendants non-taxable costs in the amount of $78,710.91.

## CONCLUSION

Defendants' Motion for Attorney Fees and Costs, ECF 317, is GRANTED. Defendants are awarded attorney fees in the amount of $1,307,407.50 and non-taxable costs in the amount of $78,710.91. The Court allows Defendants' Bill of Costs, ECF 314, and awards taxable costs to

Defendants in the amount of $45,540.10.

      IT IS SO ORDERED.


      DATED:_____February 28, 2025___.


                             _____
                             MARCO A. HERNÁNDEZ
                             United States Senior District Judge

**Meyer v. Mittal**
**3:21-cv-621-HZ**
**Burnside Fees**

|  | Time requested | Rate requested | Time allowed | Rate Allowed | Total |
|---|---|---|---|---|---|
| 2022 | 6.4 | 150 | 6.4 | 150 | $ 960.00 |
| 2023 | 6.7 | 200 | 6.7 | 175 | $ 1,172.50 |
| 2024 | 53.8 | 210 | 53.8 | 175 | $ 9,415.00 |
| total | 66.9 |  | 66.9 |  | $ 11,547.50 |

total    $ 11,547.50

**EXHIBIT 1**

**Meyer v. Mittal**
**3:21-cv-621-HZ**
**Pre-Reply Fees**

| | | |
|---|---|---|
| **Original request** | $ | 1,302,277.00 |
| | | |
| **Further Reductions** | | |
| Appx H | $ | 8,754.00 |
| Claw-Back | $ | 6,574.00 |
| ADX | $ | 9,959.50 |
| Reply Mtn | $ | 1,350.00 |
| SCA damages | $ | 20,866.50 |
| | $ | 47,504.00 |
| | | |
| **Court deduction for Burnside** | $ | 2,050.50 |
| | | |
| **Total** | **$** | **1,252,722.50** |

**EXHIBIT 2**

**Meyer v. Mittal**
**3:21-cv-621-HZ**
**Reply Fees**

| Staff | Hours Requested | Hours Disallowed | Rate Requested | Rate Allowed | Total |
|-------|----------------|------------------|----------------|--------------|-------|
| Sara Cotton | 13.8 | 0 | 510 | 510 | $ 7,038.00 |
| Nika Aldrich | 60.1 | 0 | 540 | 540 | $ 32,454.00 |
| David Aldred | 43.3 | 0 | 285 | 285 | $ 12,340.50 |
| Samantha Burnside | 16.3 | 0 | 210 | 175 | $ 2,852.50 |
| Jason Wrubleski | 20 | 20 | 660 | | $ - |
| Craig Russillo | 0.1 | 0.1 | 730 | | $ - |
| Julia Davis | 9.3 | 9.3 | 360 | | $ - |
| Scott Eads | 0.5 | 0.5 | 840 | | $ - |
| Mario Delegato | 4.4 | 4.4 | 335 | | $ - |

Total **$ 54,685.00**

PreReply Fees **$ 1,252,722.50**

Total Fee Award **$ 1,307,407.50**

**EXHIBIT 3**